Argued and submitted January 19, decisions of Court of Appeals and trial court affirmed March 29, 1988

## PRAGGASTIS,
*Petitioner on Review,*

*v.*

## CLACKAMAS COUNTY,
*Respondent on Review.*

(CC 84-3-107; CA A41362; SC S34531)

752 P2d 302

Cynthia L. Barrett, Portland, argued the cause and filed the petition for petitioner on review.

Miles A. Ward, Assistant County Counsel, Oregon City, argued the cause and filed a response to the petition for respondent on review.

JONES, J.

## JONES, J.

The question we address is whether a county will be protected by judicial immunity when the county is sued under the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300, for the alleged negligence of an employee of the county clerk's office, serving as a clerk of the circuit court, when the clerk does not docket a dissolution decree incorporating a property settlement agreement because of existing instructions from the presiding judge of the county.

Plaintiff alleged that: "Defendant, acting through its agents and employees in the course and scope of their business, entered the decree Dissolving Marriage, but failed to docket the judgment," resulting in financial loss to the plaintiff. The trial court directed a verdict for defendant on the grounds that "[t]he 'Decree Dissolving Marriage' * * * did not constitute a Judgment" and that "Defendant is not liable to plaintiff for damages since all the actions taken by defendant's employees were solely at the direction and instruction of Circuit Court judges, who are immune from liability for acts taken within the scope of their judicial duties and functions; the immunity of the Circuit Court judges extends in this case to defendant's agents and employees." The Court of Appeals affirmed on the ground of judicial immunity. *Praggastis v. Clackamas County,* 87 Or App 378, 742 P2d 669 (1987). We affirm the decision of the Court of Appeals.

## FACTS

On June 1, 1979, Circuit Judge Patrick Gilroy signed a decree dissolving the marriage of Kay Praggastis and James Praggastis. The decree contained the following paragraph:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the property settlement agreement entered into by the parties and received into evidence is ratified and confirmed. A copy of the property settlement is attached hereto, incorporated herein, and made a part of this decree. The parties are ordered to comply with its terms."

When the lawyer for Kay Praggastis (plaintiff) presented the decree and the attached property settlement to the County Clerk of Clackamas County on June 4, 1979, the deputy clerk who received the documents stamped "FILED" on the front page of the decree and made some unidentified notation in the

Register of Actions.[1] The deputy clerk did not docket the decree as a judgment in the judgment docket book because she had been instructed to docket only documents which specifically contained language identifying the document as a judgment.[2] Plaintiff discovered the absence of a docketed judgment in 1982 when plaintiff sought the assistance of "collection specialists," who discovered that plaintiff's former husband's obligation did not appear on title company abstracts. Plaintiff claims that when plaintiff's former husband filed for bankruptcy in November 1982, his other creditors were able to defeat plaintiff's claim. Husband claimed debts of $11,960,943.50 and assets of $2,400 in the bankruptcy proceedings.

Plaintiff's complaint alleged that defendant's employees negligently failed to docket her dissolution decree as a judgment against her former husband in accordance with ORS 18.320, which provided:

> "Immediately after the entry of judgment in any action the clerk shall docket the same in the judgment docket, noting thereon the day, hour and minute of such docketing. * * *"

Plaintiff alleged that as a consequence of this failure to docket, she was damaged in the amount of $100,000.

At the time the issues in this case arose, official acts of county clerks were governed by the following statutes:

---

[1] At trial, the chief clerk of the court testified:

"A. I couldn't make a copy of the register of actions for this case because those have been microfilmed and it's on microfiche. I did make a copy of the register of actions page for this suit and I do have that with me if you want to compare that."

The copy apparently was never offered or received in evidence.

[2] The testimony at trial from the chief judicial clerk revealed that the policy was established by the presiding judge some years before the facts in this trial. The chief clerk described the situation:

"I know it was when Judge Hammond was presiding and I don't remember the case either, but I do know that I went to Judge Hammond and he said, 'You are not attorneys. You are not required to interpret what is meant by the attorneys. If it does not specify—if it doesn't definitely say judgment, you do not docket it.' So we just carried that through and that was the policy that we used at all times."

Earlier, the same witness had elaborated on the reasons behind the policy:

"Q. Would you tell the jury what instructions you had been given by the judges?

"A. That a judgment order definitely needs to state one person has judgment against another person. That is because of the requirement with the statute there has to be a judgment creditor, a judgment debtor, a face amount, and the date of the entry."

ORS 7.010(1):

"The records of the circuit and county courts include a register, journal, judgment docket, execution docket, fee register, jury register and final record."[3]

ORS 7.020:

"The register is a record wherein the clerk or court administrator shall enter, by its title, every action, suit or proceeding commenced in, or transferred or appealed to, the court whereof he is clerk or administrator, according to the date of its commencement, transfer or appeal. And thereafter, *until the entry of judgment,* he shall note therein, according to the date thereof, the filing or return of any paper or process, or the making of any order, rule or other direction in or concerning such action, suit or proceeding." (Emphasis added.)

ORS 7.030:

"The journal is a record wherein the clerk or court administrator *shall enter the proceedings* of the court during term

---

[3] Curiously, the record reveals that Clackamas County did not keep a separate journal as mandated by ORS 7.010(1), but instead kept only a register of actions and a-judgment docket. In testifying during the trial, the clerk who originally handled the dissolution decree and attached property settlement in this case described her actions and the Clackamas County system:

"Q. * * * You received this document on June 4th?

"A. Yes.

"Q. And you were the person who date stamped it in?

"A. Yes.

"Q. What other steps did you take with regard to this decree dissolving marriage?

"A. I entered it in the register of actions and then I would have read through it to see if there were any judgments that needed to be entered in the judgment docket.

"Q. What next step would you have taken after you'd read through it?

"A. If there were anything that needed to be picked up, I would have entered it in the judgment docket. If there was anything that needed to go over to child support, I would have given them a copy of this and then I would have filed it away in the case.

"Q. Reviewing the document to refresh your memory, what steps did you take in that case with regard to the decree dissolving marriage?

"A. On this I read through it and read through the decree. I read through the property settlement because it states in here that it is incorporated into decree. I read through it to see if there were any specific judgments in here and at that time I would have read through it and determined that there was not.

"Q. What were you looking for when you went through the decree and property settlement agreement?

"A. I was looking specifically for a statement that would have said one party will have a judgment against the other." (Tr 187-88.)

time, and such proceedings in vacation as the statutes specially direct." (Emphasis added.)

ORS 7.040(1):

"The judgment docket is a record wherein judgments and decrees are docketed, as provided by statute. The judgment docket shall contain the following information: Judgment debtor; judgment creditor; amount of judgment; *date of entry in journal;* when docketed; date of appeal; decision on appeal; satisfaction, when entered; other such information as may be deemed necessary." (Emphasis added.)

ORS 18.030:

"All judgments shall be entered by the clerk in the journal. All judgments shall specify clearly the judgment debtor, judgment creditor, the amount to be recovered, the relief granted or other determination of the action. The clerk shall, on the date judgment is entered, mail a copy of the judgment and notice of the date of entry of the judgment to each party who is not in default for failure to appear. The clerk also shall make a note in the docket of the mailing. *In the entry of all judgments,* except judgments by default for want of an answer, *the clerk shall be subject to the direction of the court."* (Emphasis added.)

The chief circuit court clerk for Clackamas County described the procedure in effect in 1979 for filing dissolution documents:

"A. The clerk would sort all of the pleadings pertaining to that desk, put them in numerical order, date stamp them, and enter them on the register of action page. Then she would pick out things that needed to be set up, to be set down for hearing and things that needed to be done to go in the judgment docket and they would be docketed in the judgment docket.

"Q. When you use the word register or enter a docket, what steps are you referring to?

"A. The register of actions is a record that we keep of all the pleadings of the case from the time the case was filed until it is terminated or satisfied.

"Q. If a judgment or decree was received by you, would it show up in that entry * * * [o]r register?

"A. Yes it would.

"Q. And how is the judgment docket separate or different from the register of actions?

"(non-responsive answer)

"Q. Why do you keep things separately? Why do you keep a judgment docket record separate from a register of actions?

"A. Because the statute requires that they be docketed on a separate docket, stating a judgment creditor, a judgment debtor, a face amount, interest figure, and a place for satisfaction or any other pertinent information pertaining to that."

The alleged source of plaintiff's harm was the clerk's failure to docket the judgment. Plaintiff argues that ORS 18.320 creates a ministerial duty to docket judgments, which was breached by defendant's employee. Plaintiff argues that because this was a ministerial duty, and because the clerk in question was an employee of the elected county clerk, the doctrine of judicial immunity does not apply.

## JUDICIAL IMMUNITY

In 1979, the only statutory direction for entry of judgment or decree proceedings was found in ORS 7.030, directing the clerk to enter the proceedings in the journal.[4] ORS 18.320 assumes entry in the journal as a predicate for docketing the judgment. ORS 18.320 directs the clerk to docket the judgment "[i]mmediately after the entry of judgment," which we assume means entry in the journal. As we stated at the outset, the question before the court is not whether a clerk failing to docket a judgment has breached a ministerial duty. The question is whether a clerk who did not docket a decree of dissolution as a judgment in the judgment docket under previous orders from the presiding judge of the court not to do so is protected by judicial immunity. In order to answer that question, we must decide whether the presiding judge had authority to so direct the clerk.

This court has recognized that a clerk who negligently fails to docket a valid judgment has failed to perform a statutorily directed duty, for which the clerk may be liable. *Esselstyn v. Casteel,* 205 Or 344, 286 P2d 665 (1955). *Esselstyn* involved a divorce decree and involved an allegation that the clerk "failed and neglected to docket the said decree in the judgment docket of Umatilla County at the time it was entered or at any time thereafter." 205 Or at 349. In *Esselstyn,* this

---

[4] The present ORS 7.020 requires that judgments be entered in the register.

court held that, despite the fact that the decree called for a property settlement to be made in installments, it was a judgment entitled to be docketed, and the failure to docket the judgment could have been the cause of the plaintiff's damages; therefore, the court ruled, the plaintiff's complaint should not have been stricken.

*Esselstyn,* however, does not decide this case. Immunity was not raised as a defense in *Esselstyn.* Further, *Esselstyn* was based on pleadings of negligence. In the present case, the directed verdict was based on the undisputed testimony of the clerk and her supervisors that the decision not to docket the decree was based on the standing orders of the presiding judge.

The common law has long recognized that some public officials should be immune from civil actions for some of the actions taken in the execution of their public employment. Judicial immunity has long been a part of the immunities afforded public officials, being mentioned in the Book of Assizes, 27 Edw III, pl 18 (1354). The doctrine of immunity for acts performed by a judge acting within the court's jurisdiction has been recognized in this country since at least *Randall v. Brigham,* 74 US (7 Wall) 523, 19 L Ed 285 (1868).

This court recognized the existence and the limitations on the doctrine of judicial immunity in *Shaw v. Moon,* 117 Or 558, 245 P 318 (1926). The common law recognized that there is a public good to be gained from the principled and fearless decision-making of judicial officers freed from concern over suits by disappointed litigants. To gain this good, it is necessary to cloak judicial officers with immunity from civil liability for their acts, so long as these acts are within the jurisdiction of the officer. There is no serious question in this case that if the judge had authority to direct the clerk not to treat as docketable judgments documents which did not have the word "judgment" in them, the judge would be immune.

*Immunity for other public officials associated with the judicial process.*

■ Immunity for judicial acts extends not merely to judges. Other officials who are performing acts associated with the judicial process may be protected as well. *Watts v. Gerking,* 111 Or 641, 222 P 318, 228 P 135 (1924). This court has

indicated that the common-law immunity for judicial and quasi-judicial acts is part of those immunities preserved for discretionary acts under the OTCA, ORS 30.265(3).[5]

■■ Judicial immunity depends on the performance of a judicial function. When such judicial functions are performed by a public officer other than a judge, the immunity is often referred to as quasi-judicial immunity, but this is a distinction of name and not a distinction of immunity. *Watts v. Gerking, supra; see also Imbler v. Pachtman,* 424 US 409, 423, 96 S Ct 984, 47 L Ed 2d 128 (1976). Judicial immunity is granted or withheld on the basis of the nature of the function being performed, and not on the basis of the office. *Shaw v. Moon, supra; see also Forrester v. White,* 484 US ___, 108 S Ct 538, 98 L Ed 2d 555 (January 12, 1988).

■ Several factors are commonly examined to determine if a particular duty can be considered judicial or quasi-judicial for the purpose of extending immunity to the official performing the action. These factors include whether the official's actions are functionally comparable to judicial actions or involve decisions normally performed by judges in their judicial capacity, whether the action depends on legal opinions or discretionary judgments comparing the facts of a present situation with general legal questions, and whether the acts in question are primarily concerned with the official's role as a judicial or quasi-judicial officer. *See Ashbrook v. Hoffman,* 617 F2d 474 (7th Cir 1980); *Daniels v. Kieser,* 586 F 2d 64 (7th Cir 1978), *cert den* 441 US 931 (1979); *Wilkinson v. Ellis,* 484 F Supp 1072 (ED Pa 1980).

## IMMUNITY FOR CLERKS OF COURT

■ As with all other officers who are associated with the judicial branch, clerks are not always immune from the consequences of their acts. Where the clerk has caused harm

---

[5] *See, e.g., Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980), and *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978), which have cited and relied upon several pre-OTCA cases, including *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970) (distinguishing immunity for "discretionary and judicial acts" from immunity for ministerial acts); *Utley v. City of Independence,* 240 Or 384, 402 P2d 91 (1965) (recognizing that the doctrine of judicial immunity does not extend to actions wholly outside a judge's jurisdiction); and *Watts v. Gerking,* 111 Or 641, 222 P 318, 228 P 135 (1924) (judicial immunity extends to prosecutors sued for malicious prosecution).

through simple oversight or neglect in performing a non-judicial, ministerial act, liability may lie. Thus, for example, this court has held that where the clerk failed to enter an order vacating a judgment for punitive damages after it was delivered to the clerk by the judge who signed the order, the clerk was properly held to be liable for harm to the plaintiff. *Charco, Inc. v. Cohn,* 242 Or 566, 411 P2d 264 (1966). Where the clerk neglected to notify a party as to the date of entry of judgment, the United States Court of Appeals for the Fifth Circuit held that the clerk was not qualified for absolute immunity because the actions were routine functions of the office. *Williams v. Wood,* 612 F2d 982 (5th Cir 1980). Where the clerk was under a statutory duty to docket a judgment, the clerk might be liable for failing to docket the judgment for two or three days. *Maddox v. Astro Investments,* 45 Ohio App 2d 203, 343 NE2d 133 (1975). Further, a clerk might be liable where the clerk recorded the payment of a fine but failed to recall a warrant for the plaintiff's arrest. *Cook v. Topeka,* 232 Kan 334, 654 P2d 953 (1982).

■ All these decisions were based on the clerk's failure to perform a statutory duty. Failure to perform a statutory duty which does not involve discretion in making policy decisions will not entitle the public officer to immunity. *Bradford v. Davis,* 290 Or 855, 865, 626 P2d 1376 (1981). In the present case, the clerk was directed by statute to enter any judgment in the journal at the direction of the court, and then directed by statute to docket any judgment in the judgment docket. The clerk has a ministerial duty to docket any judgment. But the duty to enter a judgment in the journal or its equivalent is a separate duty, and it is upon this duty that the existence of judicial immunity turns.

*Immunity for following a supervisor's directives.*

■■ Clerks may derive an immunity from their performance of actions at the direction of the court. For this immunity to exist, the clerk must be acting at the direction of the court in carrying out an authorized judicial function. That the actions in question are "ministerial" in nature, or are performed at the direction of a statute, does not exclude the possibility of immunity. A clerk "may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is

performing a ministerial function at the direction of the judge." *Waits v. McGowan,* 516 F2d 203, 206 (3d Cir 1975); *see also Kermit Constr. Co. v. Banco Credito Y Ahorro Ponceno,* 547 F2d 1 (1st Cir 1976). Clerks who have followed the direction of the court in making decisions which they are also directed by statute to perform have been held immune because they were following the directions of the court. *See, e.g., Tarter v. Hury,* 646 F2d 1010 (5th Cir 1981); *Lockhart v. Hoenstein,* 411 F2d 455 (3d Cir), *cert den* 396 US 941 (1969); *Yamamoto v. Santa Cruz County Bd. of Supervisors,* 124 Ariz 538, 606 P2d 28 (1979).

■ This court recognizes the general principle that employees who are following the explicit orders of their superiors who have exercised discretionary authority in making such decisions will not be answerable for performing their duty.

> "The attempt to determine whether the function was 'discretionary' may be an inquiry whether the employee was negligent in another sense. The employee sued may have performed exactly as his superior directed or he may have performed in the only fashion possible under the restrictions placed upon him by his superiors. An employee under such circumstances should not be liable if he is a public employee. * * *

> "*Dalehite v. United States,* [346 US 15, 36, 73 S Ct 956, 97 L Ed 1427 (1953)], referring to the liability of the United States and not employees, stated: 'It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.' " *Smith v. Cooper, supra,* 256 Or at 499 n 3.

The Court of Appeals decided this case on the grounds that judicial immunity shields the clerk when acting under the direction of the court. The Court of Appeals noted:

> "[Plaintiff] does not challenge the trial court's finding that the individuals who failed to docket the alleged judgment were acting in accordance with the judge's instructions. Rather, she contends that, under ORS 18.320, docketing of judgments is a statutorily mandated duty of the county clerk and is not subject to the 'direction' of the circuit court judges. She argues, therefore, that, insofar as the judge's instructions were incorrect, any immunity from liability enjoyed by them under the circumstances of this case does not extend to defendant's employes and, under ORS 30.265(2), to defendant, assuming

that the documents did, in fact, constitute a judgment." *Prag-gastis v. Clackamas County, supra,* 87 Or App at 381.

The Court of Appeals relied on *State ex rel Tolls v. Tolls,* 160 Or 317, 85 P2d 366 (1938). In *Tolls,* this court interpreted the 1930 code, which contained language identical to the language at issue in the present case.[6] In *Tolls* the court recognized that a judge acts judicially when ordering a clerk *to docket* a judgment, that the clerk has no discretion to disobey the judge's instructions, and that the clerk acted improperly when the clerk sought advice of county counsel. Acting upon the advice of county counsel and fearing liability for docketing a void order, the clerk in *Tolls* refused to obey a trial court order to docket as a judgment an "order" in a divorce case. The clerk was held in contempt. This court affirmed the order of contempt even though the court agreed that the "order" did not constitute a judgment. Writing for the court, Justice Lusk observed that the clerk is a "mere arm of the court" and is subject to the control of the court in the performance of his or her duties. 160 Or at 332. The Court concluded that, given the relationship between clerks and the courts they serve, permitting the clerk to question an act of the court "when acting judicially" would be "intolerable." *Id* at 334. "A due regard for the dignity and authority of the office of judge and considerations of expediency and public policy demand that no such doctrine should be announced." *Id.* This court recognized in *Tolls* that determining what documents *are to be docketed* is a part of the judicial process and that when a judge gives directions in that regard, the judge acts "judicially."

As *Tolls* made clear, the process of docketing judgments is a part of the judicial process and requires the clerks to make certain quasi-judicial determinations as to what documents coming out of the courts are, in fact, docketable "judgments," and thus entitled to be docketed. Although ORS

---

[6] While other language in the relevant statutes has changed, the language of greatest concern in the present case and in *State ex rel Tolls v. Tolls,* 160 Or 317, 321, 85 P2d 366 (1938), remains the same. As did ORS 18.320 in 1979, section 2-1601 of 1 Oregon Code Annotated (1930) states "[i]mmediately after the entry of judgment in any action the clerk shall docket the same in the judgment docket." Nothing in this section mentions that this shall be done at the direction of the court. As did ORS 18.030 in 1979, section 2-1501 of 1 Oregon Code Annotated (1930) provides:

"All judgments shall be entered by the clerk in the journal, * * *.

"In the entry of all judgments, except judgments by default for want of an answer, the clerk shall be subject to the direction of the court."

18.320 provides that "[i]mmediately after entry of judgment in any action the clerk shall docket the judgment in the judgment docket * * *," the judgment docket is designed for the recording of money judgment information. The information to be recorded (*e.g.* judgment debtor, judgment creditor, amount of judgment, *see* ORS 7.040), is relevant only to money judgments. If only money judgments are to be placed in the judgment docket, the clerk of the court must determine upon examination of a document coming out of court whether that document is a docketable judgment. The clerk must determine whether a given document constitutes a "judgment" or something else, and, if it is a judgment, whether it requires docketing.

The legislature has expressly provided that the entry of judgments is a function under the direction of the court, and in so doing has apparently recognized that these duties constitute a judicial function that is part of the judicial process. Although the statutes pertaining to "entering" and "docketing" judgments are separate and may imply separate legal duties, this court has decided that the legislative design was to have the entry and docketing of judgments be part of the judicial process. *Tolls, supra,* 160 Or at 334. We are bound by the doctrine of *stare decisis* in interpreting these statutes. *See State v. Loyer,* 303 Or 612, 614 n 2, 740 P2d 177 (1987); *State v. White,* 303 Or 333, 348, 736 P2d 552 (1987). The effect of the legislature's language providing that the clerks be subject to the direction of the court is that the clerks are deemed to be acting at the direction of the courts at all times with respect to the entry and docketing of judgments. Thus, with respect to those functions, the clerk is acting under the court's direction as a matter of law.

In this case Judge Hammond decided what constitutes a docketable judgment and, even if he were wrong, his decision is cloaked with immunity. Even when a judge improperly decides that an order should be docketed as a judgment, the clerk must follow the orders of the judge. *See State ex rel. Tolls v. Tolls, supra.* Here, the opposite is true. If the court tells a clerk that a document is not a docketable judgment and should not be docketed as such, the clerk must follow the court's orders, be they right or wrong.

The language in ORS 18.030 specifying that entry of

judgments shall be subject to the direction of the court does not necessarily contemplate individual direction in each case. The proper authority issued a directive according to the statute and this order was carried out. The fact that the order was repeated or approved by subsequent judges demonstrates the continuing effect of the policy.[7]

 In directing that the clerks should not docket any papers except those that were clearly specified as judgments and contained the requisite information, whether correctly or not, the presiding judge was exercising a responsibility conferred on the court by statute.[8] In following that directive, the clerk was performing the clerk's responsibilities as directed by the statute. Because these directions were given under statutory authority in an exercise of judicial discretion, the clerk is immune from liability. Under the provisions of ORS 30.265(2),

> "Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employe or agent of a public body when such officer, employe or agent is immune from liability."

We conclude that it was proper for the trial court to direct a verdict in the present case once the evidence, never disputed by plaintiff, established that the clerk was following the statutorily authorized orders of the presiding judge. The decisions of the Court of Appeals and the trial court are affirmed.

---

[7] We do not deal in this opinion with situations involving inconsistent or conflicting orders to clerks from different judges, or with situations when a clerk does not or cannot obtain a judge's direction on docketing.

[8] ORCP 70A now requires that "[e]very judgment shall be in writing plainly labeled as a judgment and set forth in a separate document."