Argued and submitted December 1, 1989, affirmed June 27, reconsideration denied
November 28, 1990, petition for review denied January 15, 1991
311 Or 87 (1991)

Rick and Cindy MENDIVE,
*Respondents,*

*v.*

STATE OF OREGON,
acting by and through its
duly authorized agency,
CHILDREN'S SERVICES DIVISION,
and Sue Faw,
*Appellants.*

(880422111L; CA A50950)

794 P2d 807

Robert M. Atkinson, Assistant Attorney General, argued the cause for appellants. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Daniel L. Cronin, John Day, argued the cause and submitted the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Defendants are Faw, a Children's Services Division (CSD) worker, and her employers, CSD and the state. They appeal a judgment entered against them for negligent interference with a custodial relationship. We affirm.

The juvenile judge in Faw's county developed a procedure intended to shield CSD workers from liability for their actions in taking a child into protective custody. The procedure required a CSD worker and a police officer to agree, after a joint investigation, that it was necessary to take a child into custody immediately. If a juvenile department employee concurred in that view, the employee would sign an affidavit in support of a temporary custody order. The judge then would sign an order giving CSD temporary custody of the child.

On September 12, 1987, CSD received a report that two children had been physically abused by their step-mother. Pursuant to the juvenile judge's procedure, Faw investigated the report with Officer Lawson, who agreed with her that the children might have been abused. The same day, after obtaining authorization from a juvenile department counselor, but without obtaining an order from the juvenile judge, Faw took the children into protective custody. However, she did not first review CSD's files, which indicated that one of the children had earlier made false accusations of abuse against the step-mother. The juvenile department counselor later signed an affidavit in support of a motion for temporary custody, and on September 14, 1987, the juvenile judge signed an order granting CSD temporary custody. However, after examining the children in his chambers during a hearing, he concluded that there was insufficient evidence of actual or threatened serious physical injury to support the order, and he vacated it.

Plaintiffs, the children's father and step-mother, subsequently brought this action. At the end of plaintiffs' case, the trial court struck the intentional interference claims. However, the jury found in plaintiffs' favor on the remaining claims, which alleged that Faw was negligent in her investigation of the child abuse report.[1]

---

[1] Plaintiffs alleged in their amended complaint that Faw's investigation was negligent in that she failed to review CSD's files, to obtain a doctor's report or to talk to plaintiffs before she obtained a temporary custody order.

■ Defendants make three assignments of error. First, they contend that, because Faw is a CSD worker, she is absolutely immune from common law negligence claims. However, in *Tennyson v. Children's Services Division,* 308 Or 80, 90, 775 P2d 1365 (1989), decided after the parties here had submitted their briefs, the Supreme Court held that CSD workers are only entitled to qualified immunity for their investigative acts.

Defendants next contend that we should not recognize a tort of negligent investigation by a CSD worker, because such a claim would be inconsistent with existing law. According to defendants, removal of the children, which plaintiffs identified as the cause of injury to them, is tantamount to a decision to initiate juvenile court proceedings. They assert that other torts arising from the initiation of judicial proceedings, such as malicious prosecution, require proof of malice. Moreover, they contend, child protection statutes demonstrate a legislative determination that persons should be encouraged to take good faith actions to protect children.[2] Accordingly, they argue, plaintiffs' allegations of negligent investigation do not state a claim.

■ We disagree. A CSD investigation precedes and, in fact, may avoid the removal of a child from the parent's custody. Because it does not invariably result in the initiation of judicial proceedings, it is not analogous to a claim for malicious prosecution. Moreover, had the legislature wished to preclude claims of negligent investigation against CSD workers, it could have accorded them absolute immunity. It has not chosen to do so. *Tennyson v. Children's Services Division, supra.* Plaintiffs stated a claim for negligence.

■ Finally, defendants argue that Faw's acts were judicially immune under *Praggastis v. Clackamas County,* 305 Or 419, 752 P2d 302 (1988). According to defendants, *Praggastis* holds that an individual who acts pursuant to the instructions of a judge shares judicial immunity. They contend that the juvenile court judge directed that, whenever a CSD worker and a police officer had determined that a child should be

---

[2] For example, ORS 419.569(1)(b) permits a police officer, CSD worker or other person authorized by the juvenile court to take temporary custody of a child when the child's circumstances "reasonably appear to be such as to jeopardize the child's welfare." ORS 418.762 provides immunity for persons making good faith reports of child abuse to CSD or law enforcement agencies.

placed in protective custody, and if a juvenile court staff member agreed, the child's removal would be pursuant to the judge's authority.[3] Because Faw complied with that procedure in this case, defendants argue, she is judicially immune for removing the children.[4]

Defendants misread *Praggastis v. Clackamas County, supra.* The issue in that case was whether a clerk who failed to docket a judgment was judicially immune because she was following the standing orders of the presiding judge of the court. In holding that she was, the Supreme Court noted:

> "In this case Judge Hammond decided what constitutes a docketable judgment and, even if he were wrong, his decision is cloaked with immunity. * * * If the court tells a clerk that a document is not a docketable judgment and should not be docketed as such, the clerk must follow the court's orders, be they right or wrong.
>
> "* * * * *
>
> "In following [the judge's] directive, the clerk was performing the clerk's responsibilities as directed by the statute. Because these directions were given under statutory authority *in an exercise of judicial discretion,* the clerk is immune from liability." 305 Or at 431-32. (Emphasis supplied.)

The court thus recognized

> "the general principle that employees who are following the explicit orders of their superiors *who have exercised discretionary authority in making such decisions* will not be answerable for performing their duty." 305 Or at 429. (Emphasis supplied.)

The clerk's act was immune, because she was following the orders of the judge, who had previously exercised his discretion. Therefore, her failure to docket the judgment reflected the judge's decision, rather than her own. By contrast, Faw did not take custody of the children pursuant to a court order or explicit instructions from the juvenile court judge. Rather, she

---

[3] ORS 419.486(3) authorizes the juvenile court to order a child to be taken into protective custody, "[i]f it appears to the court that the welfare of the child or of the public" requires it.

[4] Defendants also argue that plaintiffs' claim cannot be recognized, because they failed to tie their emotional distress to the infringement of a legally recognized right, *i.e.,* interruption of custody of the children. That contention is not supported by the record.

made her own decision and exercised her own discretion. A judge has no authority to cloak the future decisions of others with his own immunity or to accomplish the same thing by signing a court order after the fact. It follows that Faw was not judicially immune for placing the children in protective custody.

Affirmed.