Argued and submitted November 27, 1990, reversed and remanded April 3, 1991

Tony ZAVALAS,
as Personal Representative of the Estates of
Carlos Alexander Rojano Perez, Deceased,
and Marco Antonio Zavalas Rojano, Deceased,
*Appellant,*

*v.*

STATE OF OREGON,
by and through its
DEPARTMENT OF CORRECTIONS,
*Respondent,*

*and*

Roger G. SMITH, M.D.,
*Defendant.*

Benjamin J. OLIVARES,
as Guardian ad litem for
John L. Olivares and Benjamin Olivares, Jr.;
Benjamin J. Olivares
and Maria Cruz Jiminez,
*Appellants,*

*v.*

STATE OF OREGON,
by and through its
DEPARTMENT OF CORRECTIONS,
*Respondent,*

*and*

Roger G. SMITH, M.D.,
*Defendant.*

(A8903-01455 and A8903-01456; CA A62966)

809 P2d 1329

Kurt L. Maul, Portland, Paul Bovarnick, Portland, and Hampson, Bayless, Murphy & Stiner, Portland, filed the briefs for appellants Zavalas, Olivares and Jimenez. Kurt L. Maul argued the cause for appellant Zavalas.

Paul Bovarnick, Portland, waived oral argument for appellants Olivares and Jimenez.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

In these consolidated negligence and wrongful death actions, plaintiffs appeal from summary judgments for the state. The issues are whether a probation officer is entitled to judicial immunity or discretionary immunity and, if not, whether there was evidence of negligence in this case.

Shonkwiler had been convicted of possession of a controlled substance and placed on five years' probation. As a special condition of probation, she was ordered not to possess or use any illegal drugs. Within a period of five months, she admitted to her probation officer on three occasions that she had used heroin. The probation officer, Parashos, did not report the probation violations to the sentencing court. Parashos knew that Shonkwiler regularly operated a motor vehicle. Shortly after her third admission of heroin use, Shonkwiler drove her automobile off the roadway, striking a group of children who were walking along the shoulder. After the accident, tests of her blood and urine showed cocaine and heroin metabolites and a prescription drug.

Plaintiff Zavalas is the personal representative of two children who died as a result of the accident; plaintiff Olivares is the guardian *ad litem* for two other children who were injured in the same incident.[1] They allege that, by and through the Department of Corrections and Parashos, the state[2] was negligent in (1) failing to notify the court of Shonkwiler's probation violations; (2) failing to detain or arrest Shonkwiler or otherwise violate her probation; and (3) failing to take steps to prevent her from operating a motor vehicle when the probation officer should have known that she would operate a motor vehicle under the influence of illegal drugs.[3] In the summary judgment proceeding, the state argued that Parashos was not negligent and that, in any event, she was shielded from liability by both discretionary immunity and judicial

---

[1] Individual plaintiffs Benjamin J. Olivares and Maria Cruz Jimenez are the parents of the injured children.

[2] Smith, the physician who provided the prescription drug to Shonkwiler, was a named defendant below but is not a party to this appeal.

[3] The third specification of negligence appears to be a variation on the first two, and we will not separately discuss it.

immunity. The trial court granted the state's motion for summary judgment, on the ground that the probation officer, acting as an agent of the court, was protected by judicial immunity.[4]

■     The state acknowleges that two recent decisions "cast doubt on the validity of the circuit court's reasoning." In *Praggastis v. Clackamas County,* 305 Or 419, 425-32, 752 P2d 302 (1988), the Supreme Court held that absolute judicial immunity, which is afforded to a judge acting in a judicial capacity, also protects a clerk who performs a ministerial docketing duty, when the clerk acts at the direction of the court, the challenged act is a judicial function[5] that is part of the judicial process and the court's directive is an authorized exercise of judicial discretion. In the present case, the probation officer was not acting pursuant to a judge's direction, and the state does not argue that the act of reporting probation violations is a "judicial function." Parashos' reporting function was not entitled to absolute judicial immunity. *See Fay v. City of Portland, supra* n 4, 311 Or at 73-74.

In *Tennyson v. Children's Services Division,* 308 Or 80, 775 P2d 1365 (1989), the court addressed the question of whether CSD caseworkers are entitled to absolute judicial immunity under 42 USC § 1983. Relying on federal case law, the court determined that they are entitled only to *qualified* judicial immunity when performing investigations, taking children into custody and limiting parents' visitation, but are

---

[4] In *Fay v. City of Portland,* 311 Or 68, 72 n 4, 804 P2d 1155 (1991), the Supreme Court said:

"Immunity for performing acts associated with the judicial process extended to public officers other than judges is often referred to as quasi-judicial immunity. As we stated in *Praggastis v. Clackamas County,* 305 Or 419, 427, 752 P2d 302 (1988), the distinction between the immunity that protects a judge and the immunity that protects a public officer for performing a judicial function 'is a distinction of name and not a distinction of immunity.' We, therefore, choose not to employ the term 'quasi-judicial immunity' in the present case."

[5]     "Several factors are commonly examined to determine if a particular duty can be considered judicial or quasi-judicial for the purpose of extending immunity to the official performing the action. These factors include whether the official's actions are functionally comparable to judicial actions or involve decisions normally performed by judges in their judicial capacity, whether the action depends on legal opinions or discretionary judgments comparing the facts of a present situation with general legal questions, and whether the acts in question are primarily concerned with the official's role as a judicial or quasi-judicial officer." 305 Or at 427.

entitled to *absolute* immunity when testifying in court, because witnesses are an "integral part of the judicial process." 308 Or at 89. The court also held that caseworkers are entitled to absolute immunity when filing petitions that initiate juvenile court proceedings, because that act is analogous to a district attorney's initiation of a prosecution. 308 Or at 88.

The state suggests that a probation officer's initiation of a revocation hearing presents a similar case. Initiation is accomplished, not by filing a petition, but by arrest or issuance of a citation. ORS 137.553(1); ORS 137.550.[6] Although an arrest sets in motion a process by which a probationer is quickly brought before the sentencing court for the judge to exercise judicial discretion in revoking probation, for purposes of immunity there is no basis for distinguishing that arrest from a police officer's. Taking an individual into official custody is a law enforcement activity; the authority to revoke probation resides only in the court. ORS 137.550(4)(a). Probation officers have "the powers of peace officers in the execution of their duties," ORS 137.620, and possess no independent authority to make revocation decisions. The fact that a procedure exists to expedite revocation does not transform the arrest of a probationer into a judicial act.[7] Accord-

---

[6] ORS 137.550 provides, in part:

"(2) * * * Any probation officer, police officer or other officer with power of arrest may arrest a probationer without a warrant for violating any condition of probation, and a statement by the probation officer setting forth that the probationer has, in the judgment of the probation officer, violated the conditions of probation is sufficient warrant for the detention of the probationer in the county jail until the probationer can be brought before the court. The probation officer, as soon as practicable, but within one judicial day, shall report such arrest or detention to the court that imposed the probation. The probation officer shall promptly submit to the court a report showing in what manner the probationer has violated the conditions of probation.

"(3) * * * [The] magistrate, in the exercise of discretion, may order the probationer held pending revocation hearing or pending transfer to the jurisdiction of another court where the probation was imposed. In lieu of an order that the probationer be held, the magistrate may release the probationer upon the condition that the probationer appear in court at a later date for a probation revocation hearing."

[7] Contrary to the state's assertion, a probation officer's arrest does not parallel a district attorney's initiation of a prosecution, which is entitled to absolute immunity. *See Watts v. Gerking,* 111 Or 641, 228 P 139 (1924); *Beason v. Harcleroad,* 105 Or App 376, 382, 805 P2d 700 (1991).

ingly, Parashos is not entitled to absolute judicial immunity for her decision not to arrest Shonkwiler.[8]

The state argues that the trial court should nonetheless be affirmed on the ground that Parashos' decision not to report Shonkwiler's probation violations and her decision not to effect an arrest[9] were discretionary acts that are shielded from liability by discretionary immunity. ORS 30.265(3)(c).[10]

■ ■ We first address the matter of reporting. ORS 137.540(5) provides:

> "*Failure to abide by all general and special conditions imposed by the court* and supervised by the probation department and its representatives *may result in arrest and revocation of probation and will result in notification of the violation to the sentencing court.*" (Emphasis supplied.)

The state argues that the statute imposes no responsibility on probation officers, because "no particular group of persons is told to do anything." We disagree. The statute informs a probationer that the judge who placed her on probation will be notified of any violation. Although it does not specify *who* will provide that information to the judge, the probation officer is often the only individual in a position to do so.[11] When the legislature has not specified which agency is responsible for administering a law, we regard the law as "impliedly allocating [its] administration * * * to the agency which was created by the legislature to carry out the same type of function with which the statute is concerned." *Dilger v. School Dist 24CJ,*

---

[8] The availability of qualified immunity was not raised, and we therefore do not address it.

[9] A probation officer "may arrest" a probationer for violating the terms of probation. ORS 137.550(2).

[10] ORS 30.265(3) provides, in part:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, *whether or not the discretion is abused.*" (Emphasis supplied.)

Subsection (c) extends *absolute* immunity to acts that fall within the definition of "a discretionary function or duty." *Praggastis v. Clackamas County, supra,* 305 Or at 428.

[11] ORS 137.630(1)(e) provides that probation officers shall "keep detailed records of the work done and * * * make such reports to the courts and to the Department of Corrections as such courts require." *See also* OAR 291-65-007.

222 Or 108, 113, 352 P2d 564 (1960). We conclude that the Department of Corrections, acting through its probation officers, is responsible for notification under ORS 137.540(5).

Although ORS 137.540(5) does not specify when the sentencing judge must be notified and which violations must be reported, the state and plaintiffs agree that, without contrary evidence of legislative intent,[12] a probation officer must report *all* probation violations within a reasonable time. The question, then, is whether the officer's determination of what constitutes a reasonable time is discretionary and entitles the officer to immunity. Plaintiffs argue that the reporting function is purely ministerial and does not require the exercise of policy judgment. The state argues that "the statute does not divest a probation officer of the discretion to decide which violations warrant immediate notification" and which violations do not.

Parashos' decision about when to file the Shonkwiler report was "discretionary" in the sense that she was required to exercise judgment.[13] However, that does not automatically entitle her to the protection of discretionary immunity. In *Lowrimore v. Dimmitt,* 310 Or 291, 296, 797 P2d 1027 (1990), the Supreme Court reviewed previous cases and applied the rules of discretionary immunity to a police officer's decision to pursue a high speed chase through an urban area. Relying on *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978), *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980), *Little v. Wimmer,* 303 Or 580, 739 P2d 564 (1987), and *Bradford v. Davis,* 290 Or 855, 626 P2d 1376 (1981), the court said:

> "These precedents state the rule that immunity will apply to decisions involving the making of policy, but not to routine decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action. A traffic officer's decision to

---

[12] As the state argues in its brief:

"When the legislature wanted to require notification within a specific time period, it knew how to say so. [ORS 137.550(2)] provides that when a probation officer has arrested a person for violating probation, '[t]he probation officer, as soon as practicable, but within one judicial day, shall report such arrest or detention to the court that imposed the probation.'"

[13] The Department of Corrections has not promulgated rules, and the parties cite no internal policies that state precisely *when* probation officers must report probationers' violations. *See* note 14, *infra.*

pursue a vehicle * * *, though discretionary in the sense that it involves the exercise of judgment and choice by the officer, is not one that qualifies its maker to immunity under ORS 30.265(3)(c). The making of the decision to pursue *does not create any departmental policy and was not made by a person 'with governmental discretion.'* (Citation omitted.) Although the decision to pursue may have been made pursuant to a county departmental policy, the decision itself is not a policy judgment within the meaning of *McBride v. Magnuson, supra,* and *Stevenson v. State of Oregon, supra."* 310 Or at 296. (Emphasis supplied.)

Under that language, a probation officer's duty to report probation violations is not a discretionary function that entitles her to immunity under ORS 30.265(3)(c). Although deciding which violations are serious enough to warrant *immediate* notification and which are not requires the officer to make "a choice among two or more courses of action" and involves the exercise of judgment, it does not "create any departmental policy." *Lowrimore v. Dimmitt, supra,* 310 Or at 296; *see also Buchler v. Oregon Corrections Div.,* 104 Or App 547, 803 P2d 733 (1990). The same is true of the decision whether to arrest. We hold that discretionary immunity does not protect a probation officer from liability for exercising reporting duties under ORS 137.540(5) or for arrest decisions under ORS 137.550(2).

Even if the trial court erred in granting summary judgments on the basis of immunity, the state argues that there is no evidence that Parashos was negligent. As we have held, a probation officer must report all probation violations in a timely fashion. Timeliness is relative and depends on, among other things, the seriousness of the violation. Shonkwiler had been convicted for possessing a controlled substance; she had admitted to Parashos that she had committed that same crime a second, third and fourth time.[14] The sen-

---

[14] We note that, under the Department of Corrections' "Revocation Guidelines," a "condition violation" is "any act or behavior which is forbidden by the client's conditions of supervision but which does not constitute criminal conduct." OAR 291-114-010(1). "New Criminal Conduct" is defined as "any violation of criminal law which can be substantiated by a preponderance of evidence whether or not it has led to new criminal charge(s) and which has occurred since the client was placed on community supervision." OAR 291-114-010(6). Parole and probation officers are charged with the duty of "determin[ing] whether [a] violation is new criminal conduct or [a] condition violation." OAR 291-114-015(1). "Criminal conduct violation includes drug usage discovered through urinalysis, track mark or admission." OAR 291-114-015(1)(a). The rule provides that the "releasing authority must be notified of all violations." OAR 291-114-015(20). Here, the sentencing judge was the "releasing authority." OAR 291-114-010(10).

tencing judge was not informed of the violations, and no action was taken by the probation officer. Shonkwiler's acts also violated her special conditions of probation, which were entitled to particular attention by the probation officer and required rigorous compliance by the probationer.[15]

■          Under the circumstances, a reasonable factfinder could conclude that a probation officer of ordinary prudence would have promptly reported the violations or arrested the probationer and that failure to take either action created a foreseeable and unreasonable risk of harm to individuals coming in contact with Shonkwiler. *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987).[16]

The state argues that, even if Parashos improperly decided that Shonkwiler's violations did not warrant immediate notification to the court, there is no causal connection between the alleged negligence and the harm that occurred, because

> "plaintiff's argument assumes that if Ms. Parashos had notified the sentencing court in February, May and June of 1988, Ms. Shonkwiler's probation would have been revoked and she would have been taken off the streets. * * * [N]o reasonable fact finder could say that Ms. Shonkwiler's probation would have been revoked if Ms. Parashos had notified the court."

The state's argument rests on the fact that, even had the sentencing judge known of Shonkwiler's new criminal activity, she might not have been incarcerated. That possibility does not defeat plaintiff's claim that the officer's failure to report the violations could have been found to have been a substantial contributing cause of Shonkwiler's conduct and plaintiffs' injuries and deaths. *See Egner v. City of Portland,* 103 Or App 623, 627, 798 P2d 721 (1990). The existence of a causal link between the alleged negligence of Parashos and the harm sustained is a question of fact. Although the state's

---

[15] The Department of Corrections operates under a mandate that it "[s]upervise persons sentenced or placed in the community for the period of time specified and in accordance with conditions of supervision ordered by the release authority." ORS 423.020(1)(g).

[16] "[T]he concept of foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events." 303 Or at 21.

affidavits set out the probation officer's opinion that a revocation of probation "would not likely have occurred, had such a recommendation been made to the sentencing court," that speculation falls short of meeting the state's burden of demonstrating a lack of causation.[17]

We conclude that the trial court erred in granting summary judgment for the state. Foreseeability, causation and the reasonableness of the officer's decisions not to report or arrest are material fact questions to be determined.

Reversed and remanded.

---

[17] The state appears to argue that, had the probation officer reported Shonkwiler, there might have been an independent intervening cause of her being on the road. That argument is strange, to say the least. The probation officer's failure to report Shonkwiler was itself the cause of the court not having the ability to keep her on or off the road, which was the court's decision to make, not the probation officer's.