Submitted on record and briefs September 7, affirmed December 26, 2007

JEFFREY ALAN EDWARDS,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
acting by and through its duly authorized agency
DEPARTMENT OF HUMAN RESOURCES
Children Adult and Families Division;
City of Corvallis,
acting by and through its duly authorized
Corvallis Police Department;
Shawn Houck; and Jon Keefer,
*Defendants-Respondents.*

Benton County Circuit Court
0310549; A129256

175 P3d 490

Jeffrey Alan Edwards filed the briefs *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael C. Livingston, Senior Assistant Attorney General, filed the brief for respondent State of Oregon.

Jason M. Montgomery and Law Office of Robert E. Franz, Jr. filed the brief for respondents City of Corvallis, Jon Keefer, and Shawn Houck.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

This civil action arises out of the investigation of and subsequent criminal proceedings against plaintiff for the alleged abuse of his minor child. Some of the charges brought against plaintiff were dismissed; on the remaining charges, plaintiff was acquitted. He subsequently initiated this action for malicious prosecution, negligence, and "harassment" against the prosecutors, police officers, and the Department of Human Services (DHS)[1] worker who investigated and prosecuted him. He also sought to hold the state, Benton County, and the City of Corvallis responsible for the acts of their respective agents. The trial court granted summary judgment on all claims as to all defendants under ORCP 47, and plaintiff appeals.[2] We affirm.

On appeal, plaintiff advances a number of assignments of error concerning the trial court's grant of summary judgment on his malicious prosecution and negligence claims.[3] Initially, we agree with the trial court's ruling that, as a matter of law, probable cause existed to prosecute plaintiff. Therefore, it was proper to grant summary judgment on plaintiff's malicious prosecution claims. We also affirm the judgment as to plaintiff's negligence claims against all defendants, with the exception of the state, without further discussion. We write only to address plaintiff's negligence claim against the state based on allegations that Lowery, a DHS employee, negligently investigated reports that plaintiff abused his minor child, reports that led to his prosecution.

In his second claim for relief against the state, plaintiff alleges that "Lowery was negligent in investigation for

---

[1] DHS was formerly known by other names. We use its current name throughout this opinion.

[2] Benton County and other defendants were named as parties to this appeal. This court ordered plaintiff to show cause why certain defendants, including the county, should not be dismissed on the ground that they are not shown in the trial court register to have appeared as defendants. Plaintiff responded that, in the trial court, he agreed to substitute the state as the sole defendant and that the substitution had been accomplished by order. We subsequently dismissed the county and various other defendants as parties to the appeal on that ground.

[3] Plaintiff does not assign error to the trial court's determination that his "harassment" claim failed to state a claim for relief, and we do not discuss it further.

not following [the] Client Service Manual and Oregon Administrative Rules governing child abuse investigations."[4] Plaintiff further alleges that she was negligent in failing to investigate "previous family abuse allegations and interview family relatives." The state moved for summary judgment on plaintiff's negligence claim on various grounds, including (1) that Lowery followed the Client Services Manual and all Oregon Administrative Rules and had no reason to investigate previous abuse allegations or interview relatives where no prior reports existed; (2) that the negligence claim was brought outside the two-year limitations period set forth in the Oregon Tort Claims Act (OTCA), ORS 30.275(9); and (3) that plaintiff failed to provide timely notice of his claim as required by the OTCA, ORS 30.275(2).

In support of its motion for summary judgment, the state submitted an affidavit from Lowery. In that affidavit, Lowery testified that, to the best of her knowledge, she "followed all training procedures when investigating the report of child abuse involving [plaintiff's child]" and "followed the Client Services Manual and all Oregon Administrative Rules when [she] conducted the child abuse investigation involving [plaintiff's child]."

In response to the state's motion and Lowery's affidavit, plaintiff submitted, among other things, a transcript of Lowery's testimony at plaintiff's criminal trial, a transcript of Lowery's interview of plaintiff's child, copies of various provisions of the Oregon Administrative Rules governing child abuse investigations by DHS, a transcript of the testimony of one of plaintiff's experts in the underlying criminal trial regarding Lowery's investigation, and an affidavit from his child's grandmother. He also submitted an affidavit in which he averred that he "learned during the criminal tr[ia]l that DHS caseworker. [Lowery] did not conduct any investigation into the family background," and that he "learned during the

---

[4] Plaintiff initially named Lowery and the state, acting through DHS, as defendants. As explained above, 217 Or App at 190 n 2, the state moved, pursuant to ORS 30.265(1), to substitute the public body as the sole defendant, and the court granted the state's motion and dismissed Lowery and other defendants. On appeal, plaintiff does not assign error to the dismissal of Lowery; accordingly, we discuss the allegations against Lowery only in the context of plaintiff's negligence claim against the state.

criminal tr[ia]l that DHS caseworker [Lowery] did not follow all training procedures, Client Services Manuals, and all Oregon Administrative Rules when investigating the report of child abuse."

The trial court granted the state's motion for summary judgment on various grounds. Initially, the court concluded that plaintiff failed to "allege or prove that the Defendants' conduct unreasonably created a foreseeable risk" of harm to plaintiff, and distinguished two cases, *Mendive v. Children's Services Div.*, 102 Or App 317, 794 P2d 807 (1990), *rev den*, 311 Or 87 (1991), and *Tennyson v. Children's Services Division*, 308 Or 80, 775 P2d 1365 (1989), that involved negligence claims based on child abuse investigations. The court further concluded that plaintiff's negligence claim against the state was barred because he "failed to commence his action in a timely manner and also failed to provide the OTCA notice within 180 days as required by law."

On appeal, plaintiff argues that the trial court's ruling was erroneous both as to whether Lowery's conduct created an unreasonable risk of foreseeable harm and as to the requirements of the OTCA. Ordinarily, we would address the application of the statute of limitations before determining whether plaintiff created a genuine issue of material fact as to various specifications of his negligence claim. In this case, however, there is some question as to the exact factual basis for plaintiff's specifications of negligence, and as to whether those specifications are factually and legally distinct. *See Gaston v. Parsons*, 318 Or 247, 260, 864 P2d 1319 (1994) ("Just because one specification of negligence in a complaint is barred by the statute of limitations, it does not necessarily follow that a specification of negligence having a different factual or legal basis is barred."). For ease of analysis in this case, we elect to first determine the available factual and legal bases of plaintiff's negligence claim before determining whether that claim is time barred. Thus, we begin with the issue of whether plaintiff's proffered evidence was sufficient to support a negligence claim under these circumstances.

This court has previously recognized that a claim for common-law negligence can be based on a negligent investigation by a child protective services worker. *See Mendive*, 102

Or App at 320. In *Mendive*, the plaintiffs—parents whose children had been taken into protective custody—brought a claim against the state based on allegations that the Children's Services Division (CSD) worker who conducted an investigation was negligent in that she failed to review CSD's files, to obtain a doctor's report, or to talk to plaintiffs before she obtained a temporary custody order. The jury returned a verdict in favor of the plaintiffs. On appeal, the state argued that the removal of children based on abuse is tantamount to the initiation of juvenile court proceedings, and that a tort arising from such proceedings (*e.g.*, malicious prosecution) would require proof of malice. Thus, the state contended that a claim based on a negligent investigation by CSD workers "would be inconsistent with existing law." *Id.* We rejected that argument on the ground that CSD investigations of abuse do not invariably lead to the initiation of judicial proceedings and are therefore not analogous to malicious prosecution claims. We further concluded that, had the legislature intended to accord absolute immunity to CSD workers, it could have done so. *Id.* (citing *Tennyson*, 308 Or at 90).

Our holding in *Mendive* furnishes the legal basis on which plaintiff's negligence claim relies. However, it is unclear whether plaintiff contends that Lowery's conduct created an unreasonable risk of foreseeable harm, or whether, by citing administrative rules applicable to child abuse investigations, plaintiff intends to invoke "a status, a relationship, or a particular standard of conduct that creates, defines, or limits" Lowery's duty as a DHS worker. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). Nonetheless, for the reasons discussed below, we conclude that, under either standard, the result is the same.

In his complaint, plaintiff refers generally to Lowery's failure to follow the "Client Service Manual and Oregon Administrative Rules governing child abuse investigations" and to Lowery's failure to investigate the family

---

[5] Both plaintiff and the state advance many of their arguments on appeal, particularly concerning the merits of plaintiff's negligence claim, by simply incorporating by reference their summary judgment briefing—a practice that we do not condone.

background and relatives.[5] In response to the state's motion for summary judgment (and Lowery's affidavit, which stated that she was in compliance with the Client Services Manual and all applicable Oregon Administrative Rules), plaintiff was more specific. He contended that Lowery failed to contact child's paternal grandmother as required by OAR 413-020-0430(9).[6] That rule provides, in part, that the DHS worker should "[i]nterview collateral sources of information * * * who may have first-hand knowledge of the reported incident or family circumstances. This includes family members living outside the home." Plaintiff, however, offered no evidence of what the child's grandmother would have told Lowery regarding the family's circumstances and, in his response to the state's motion, did not explain how such an interview would have affected Lowery's investigation.

Plaintiff further argued to the trial court that Lowery did not secure the child's medical records as contemplated by OAR 413-020-0430(6). That rule provides that medical records should be requested "as necessary, to assist in the assessment." However, plaintiff did not offer any evidence that past medical records were necessary to the assessment of whether he had abused his child or that the failure to obtain the records created a foreseeable risk of harm that plaintiff would be prosecuted criminally or suffer the consequences of such a prosecution.

Plaintiff also cited OAR 413-020-0430(6)(e) and argued that Lowery should have reviewed previous psychiatric or psychological evaluations of the mother of his child. That rule, too, provides that such evaluations should be considered "as part of the protective services assessment when necessary to complete case planning." OAR 413-020-0430(6)(e). Again, plaintiff did not produce any evidence that such an evaluation was "necessary to complete case planning" or created an unreasonable risk of foreseeable harm to plaintiff.

Plaintiff also, at various points, contended that Lowery asked leading questions during an interview with

---

[6] All references to Oregon Administrative Rules are to the version of those rules in effect at the time of Lowery's investigation in May 2000.

plaintiff's child. In support of that contention, he offered the entire transcript of the interview and testimony from the expert in his criminal trial, Dr. Alison Clarke-Stewart. During the criminal trial, Clarke-Stewart was asked, "What about leading and prompting the child?" Clarke-Stewart responded, "She [Lowery] was restating it, and then saying, 'Is there anything else, anything else, anything else?' so in that sense, prompting." Based on the transcript of the interview and Clark-Stewart's testimony, there is no reasonable inference available to establish that Lowery's questioning was improper, such that it created an unreasonable risk of harm to plaintiff. Rather, the record demonstrates that Lowery asked the child to expand on her responses if other undisclosed circumstances existed.

The remaining possible basis for plaintiff's negligence claim is his contention that Lowery did not interview *him* as part of her abuse investigation. Plaintiff points out that OAR 413-020-0430(8) specifically provides that an investigator should "[i]nterview the child's parent(s) or caretaker(s), including the alleged abuser, the same day as the child, if possible." We agree with plaintiff that, in light of the applicable administrative rules and the circumstances of this case, evidence that Lowery failed to obtain his version of the circumstances surrounding the alleged abuse of his child creates a genuine issue of material fact regarding Lowery's negligence in carrying out her duties as a DHS worker. Based on all of the circumstances underlying Lowery's investigation and giving plaintiff the benefit of all reasonable inferences therefrom, a reasonable juror could find that Lowery violated OAR 413-020-0430(8), and that her failure to interview plaintiff created an unreasonable risk that plaintiff would be harmed by an incomplete investigation.[7] It follows that, as to

---

[7] The state argued below that DHS is not required to notify the parents if it would compromise the safety of the child or the criminal investigation, and that plaintiff was subsequently interviewed by law enforcement and refused to cooperate. A reasonable juror would be entitled to conclude, on these facts, that the state was not negligent or that plaintiff was not harmed by Lowery's investigation; for purposes of summary judgment, however, the record contains competing factual inferences as to why plaintiff was not interviewed and what impact that had on the investigation.

We further note that the state does not argue that it is immune from liability because Lowery was performing discretionary functions or duties, ORS 30.265(3)(c), and we express no opinion on that issue.

that claim, summary judgment was precluded, assuming that plaintiff provided proper notice under the statute of limitations provisions of the OTCA.

We turn to the latter issue. The OTCA provides, in part:

"(1)   No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

"(2)   Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

"(a)   For wrongful death, within one year after the alleged loss or injury.

"(b)   *For all other claims, within 180 days after the alleged loss or injury*.

"* * * * *

"(7)   In an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300, the plaintiff has the burden of proving that notice of claim was given as required by this section.

"* * * * *

"(9)   Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 *shall be commenced within two years after the alleged loss or injury*."

ORS 30.275 (emphases added).

■   Thus, under the OTCA, a plaintiff must provide notice of a claim within 180 days "after the alleged loss or injury" and must commence the action within two years

"after the alleged loss or injury." In both cases, ORS 30.275 incorporates a "discovery rule." *See Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980); *Dowers Farms v. Lake County*, 288 Or 669, 681, 607 P2d 1361 (1980). The notice and commencement periods set forth in the OTCA begin to run when

> " 'the plaintiff knows or, in the exercise of reasonable care should know, facts that would make an objectively reasonable person aware of a substantial possibility that all three of the following elements exist: an injury occurred, the injury harmed one or more of the plaintiff's legally protected interests, and the defendant is the responsible party. *Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994); *Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980). If the plaintiff's actual or imputed knowledge falls short of the quantum necessary to establish one of the elements but that knowledge should trigger a duty to pursue a further inquiry, then the relevant date for starting the statutory period is not when the plaintiff learns the necessary facts but when the inquiry that those facts should trigger would disclose the existence of the element. *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002).' "

*Johnson v. Mult. Co. Dept. Community Justice*, 210 Or App 591, 593, 152 P3d 927, *rev allowed*, 343 Or 115 (2007) (quoting *Benson v. State of Oregon*, 196 Or App 211, 215, 100 P3d 1097 (2004)).

As discussed above, plaintiff's only viable theory of negligence is that Lowery failed to interview him as part of her investigation. Plaintiff contends that he did not discover his loss or injury arising from that negligence until Lowery testified at trial on December 14, 2001, regarding her investigation. Plaintiff provided notice of his claim against the state on June 6, 2002—174 days after Lowery testified. He commenced this action on December 9, 2003, just short of two years after his criminal trial.

■ The flaw in plaintiff's argument, however, is that he *knew* that he had not been interviewed, as well as the results of Lowery's investigation, long before she testified at trial. Moreover, plaintiff was aware of the harm that he allegedly suffered as a result of Lowery's investigation, including nine

days in jail, "separation from his minor child," and distress associated with facing a criminal trial—all of which preceded Lowery's trial testimony.[8] *See Raethke v. Oregon Health Sciences Univ.*, 115 Or App 195, 198, 837 P2d 977 (1992), *rev den*, 315 Or 442 (1993) (in an action against a public body, a cause of action "accrues from the date the injury is, or should have been, discovered, not from the time the full extent of damages is ascertained"); *see also Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 165, 742 P2d 1176 (1987) (holding that it is immaterial that the full extent of damages is unknown for purposes of determining when a statute of limitations begins to run). Thus, plaintiff's arguments regarding the application of the discovery rule are unavailing, and the only viable basis for his negligence claim—that Lowery failed to get his side of the story—is barred by the notice and statute of limitations provisions of the OTCA.[9]

Affirmed.

---

[8] In his affidavit, plaintiff states that he was separated from his child beginning in May 2000 and did not visit with her again until September 2001.

[9] We note that, unlike his malicious prosecution claims—an element of which is that the criminal proceedings terminate in plaintiff's favor—plaintiff's negligence claims accrued independently of his ultimate success at trial.