Argued June 5, affirmed November 12, 1970

QUIRK, *Appellant, v.* ROSS ET AL, *Respondents.*

476 P2d 559

*Dennis W. Skarstad*, Portland, argued the cause for appellant. With him on the briefs were Lent, York, Paulson & Bullock, Goldsmith, Siegel & Engel, Charles Paulson, and Edward I. Engel, Portland.

*James K. Buell*, Portland, argued the cause for respondent Marjorie I. Ross, Executrix of the Estate of Budd H. Ross, Deceased. With him on the brief were Phillips, Coughlin, Buell & Phillips, and David N. Hobson, Portland.

*Lamar Tooze, Jr.*, Portland, argued the cause for

respondent Mercedes-Benz. With him on the brief were Tooze, Powers, Kerr, Tooze & Peterson, and E. Richard Bodyfelt, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN,* DENECKE, HOLMAN, TONGUE, and HOWELL, Justices.

HOLMAN, J.

This was an action for damages for personal injuries suffered as a result of a one-car accident. Plaintiff was riding as a passenger in a Mercedes-Benz automobile which was operated by the defendant Ross. Insofar as it is relevant to this appeal, plaintiff charged that Ross was grossly negligent in the operation of the vehicle and that the defendant Mercedes-Benz was negligent in the manner in which it constructed and designed the vehicle. Plaintiff appeals from a judgment entered on a jury verdict in favor of the defendant Ross and a judgment of involuntary non-suit granted to the defendant Mercedes-Benz. The defendant Ross died after trial, and the executrix of his estate was substituted as a party defendant.

Plaintiff and the defendant Ross had been married and divorced. On the day in question, while operating a Mercedes-Benz automobile, Ross picked up plaintiff at her home to take her to lunch for the purpose of discussing whether he would help her financially with the purchase of some furniture. In addition, they discussed their children, plaintiff's future, and various other personal and family matters. On the way to lunch, defendant stopped to pick up some

---

* Sloan, J., resigned September 30, 1970.

mechanical parts needed for his business. During lunch defendant and plaintiff each had a couple of drinks. After they had eaten, they drove north on Interstate Avenue in the city of Portland, during which time Ross was testing the brakes of the vehicle as he had been having difficulty with them. As he applied the brakes, the vehicle would pull violently to the right. This occurred several times. After the last such occasion, the vehicle straightened out and then veered off to the right into a utility pole. As the result of her injuries, plaintiff has no recollection of the occurrences of that day.

■ Plaintiff first contends that the trial court erred in refusing to allow her to amend her complaint at the conclusion of her case in chief for the purpose of conforming it to proof that Ross was intoxicated at the time of the accident. ORS 16.390 provides that an amendment to conform to the proof may be allowed "* * * in the interest of justice * * * when the amendment does not substantially change the cause of action * * *." Such a motion to amend a complaint during trial should normally be allowed unless the other party will be prejudiced in some respect. *Morrill v. Rountree*, 242 Or 320, 325, 408 P2d 932 (1966). The decision as to whether or not the other party will be prejudiced is committed to the discretion of the trial judge, and his decision will not be reversed in the absence of an abuse of such discretion. *Von Bergen v. Kuykendall*, 240 Or 191, 193, 400 P2d 553 (1965) ; *Cluck et ux v. Fish et al*, 230 Or 63, 68-9, 368 P2d 626 (1962).

■ Where the party seeking the amendment has reasonable means of learning or has knowledge prior to trial of the circumstances which make it desirable for him to amend, a slight chance that the other party

will be prejudiced will justify a refusal of the requested amendment. The record discloses that plaintiff's lawyers knew or should have known long prior to trial of all evidence concerning Ross's drinking. We cannot say with absolute assurance that the defendant Ross would have been prepared to defend such a charge when it was not made until after plaintiff closed her case in chief. Under such circumstances, we cannot hold that the interests of justice required a different decision.

■ Plaintiff next contends that the trial court erred because it refused to submit to the jury the issue of whether plaintiff was a passenger rather than a guest under the provisions of ORS 30.115,[1] and, if a passenger, whether she was entitled to recover against Ross on the basis of ordinary negligence. She argues that because defendant Ross was discussing whether he should give financial assistance to her at the same time he was picking up some mechanical parts for himself, the jury could have found that he was attending to his business affairs with a minimum loss of time, and, therefore, her presence in his vehicle was not the result of his hospitality but, rather, of his convenience. We hold as a matter of law that plaintiff was a guest and not a passenger. Plaintiff's presence in the vehicle was not of any direct convenience or help to Ross or to his business. We do not deem the incidental convenience to Ross of his not having to see her at another time as being sufficient to justify a holding that the primary

[1] ORS 30.115. "No person transported by the owner or operator of a motor vehicle * * * as his guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication * * *."

reason for her presence was other than his hospitality. There was no error.

■ Plaintiff also contends the trial court erred because it refused to allow admission of the defendant Ross's hospital records which showed he had alcohol on his breath. The court so ruled on the ground that the evidence was cumulative. Even though there was testimony that defendant smelled of alcohol at the time of the accident and he admitted having had two drinks, plaintiff argues that the smell of alcohol on defendant's breath at a later time in the hospital is not cumulative because it indicates an even greater ingestion of alcohol than the previous evidence justifies. There is no use spending the court's time deciding the question, because, even if the trial court erred, we do not consider it of a consequence sufficient to justify a reversal.

Plaintiff finally contends that the trial court erred in granting defendant Mercedes-Benz's motion of involuntary non-suit. This, of course, raises the question of the sufficiency of plaintiff's evidence against Mercedes-Benz. Plaintiff's contention that she presented an adequate case is directed toward her strict liability count alleging that the automobile was unreasonably dangerous by reason of the design and construction of its rear axle.

There was proof that an examination of the rear axle shaft revealed diagonal scratches on its surface adjacent an oil seal interposed between a bearing and the brake assembly on the right rear wheel. It was stipulated that these helical markings were put there by defendant in the manufacture of the vehicle. Plaintiff's expert witness testified that such marks were put on the shaft to wear the edge of the seal down

to a perfectly round surface and to promote adhesion of the lubricant to the shaft. He stated that in the United States ten years or more prior, manufacturers deliberately introduced such roughness of the axle in the seal area for the reasons specified; but that now, with the manufacture of a new type of seal, no "bedding in" process was required and some oil seal manufacturers had cautioned against such markings on the shaft. He stated that the scratches have an abrasive effect which causes the seal to wear more rapidly.

He also testified that he found an accumulation of grease on the right rear brake plate and that this would result in an initial ineffectiveness of that particular brake, causing the vehicle to veer to the left. However, when the heat from the friction burned the oil from the brake surface, the brake would suddenly exert its normal pressure. This would tend to cause the vehicle to swerve to the right because the driver would have already steered in that direction to counteract the original pull towards the left. He expressed the opinion that the oil on the right rear brake drum was attributable to the failure of the seal caused by the abrasive effects of the marks on the axle shaft. The vehicle in question had 39,500 miles on it and was normally serviced by the defendant Ross himself.

██ It is our opinion that there was insufficient evidence of defective design. The witness testified that some oil seal manufacturers now "caution against" helical markings on the shaft; that the life of oil seals is longer if no such marks are made upon the shaft; and that "this type of design is subject to the doubt that it will cause an early failure of the seal." If the expert witness was correct in his opinion that the seal failed, it failed after 39,500 miles of wear. There was

no evidence how long such a seal should last. Nearly all automotive parts that are subject to friction wear out sometime. The fact that other manufacturers make a longer lasting, better, and more efficient mechanism, standing alone, is not proof of defective design. The expert witness, in effect, said that if the shaft had been designed differently, the seal would have lasted longer. We deem such evidence to be insufficient. This case is distinguishable from *Tucker v. Unit Crane & Shovel Corp.*, 256 Or 318, 473 P2d 862 (1970). In that case, even though the crane boom failed after long use, the evidence was clear that the failure was due to a defective weld made during the crane's manufacture.

In addition, there is no evidence to substantiate plaintiff's expert's theory that the accident was caused by the original failure of the right rear brake. It was necessary to his theory that the driver of the vehicle be correcting a veer to the left when the right rear brake commenced its normal function after burning off the grease, thus causing an over-compensation to the right. The record is devoid of any such veer or pull to the left after braking. The testimony is that the first and only pull was to the right. This could not occur from initial failure of the right rear brake to hold because of grease or oil.

■ Plaintiff also argues that even if a defective oil seal did not cause the accident, nevertheless, it is obvious that defective brakes caused the vehicle to go out of control. She relies on the following language from *Heaton v. Ford Motor Co.*, 248 Or 467, 435 P2d 806 (1967):

"In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed,

or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect * * *." (Footnotes omitted.)  248 Or at 471-72.

Mercedes-Benz is responsible for a defect in the automobile at the time of the accident only if such defect existed at the time the vehicle left their hands.  Plaintiff is saying, in effect, that the defect in the brakes at the time of the accident is circumstantial evidence that such a defect existed at the time it left the manufacturer.  After two owners, innumerable servicings, and 39,500 miles of use free from brake difficulties except for the last few miles, no inference can be drawn that a defect existed in the brakes at the time of the vehicle's manufacture or that any such defect was the cause of the accident.

The present situation is different from that in *Vanek v. Kirby*, 253 Or 494, 450 P2d 778 (1969), where a new vehicle was loaned by a dealer to plaintiff's host and the vehicle became uncontrollable for no ascertainable reason at 9:30 on the morning it was so loaned.

The judgment of the trial court is affirmed.