Argued and submitted March 7, decision of Court of Appeals affirmed in part and reversed in part; case remanded to trial court June 13, 1989

## TENNYSON et al,
*Petitioners on Review/Respondents on Review,*

*v.*

## CHILDREN'S SERVICES DIVISION et al,
*Respondents on Review/Petitioners on Review.*

(TC No. A8502-01202; CA A40413; SC S35715, S35716)

775 P2d 1365

Michael E. Kohlhoff, Wilsonville, filed the petition and argued the cause for petitioners on review/respondents on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents on review/petitioners on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

CARSON, J.

**CARSON, J.**

This action concerns claims for federal civil rights violations and for negligence arising from a decision by child protection workers to remove a child from her home and to initiate a proceeding in juvenile court. The central issue concerns the nature of the immunity to which the individual defendants are entitled under 42 USC section 1983 (1982).[1]

Plaintiffs are Michael Tennyson (Father) and Colleen Tennyson (Mother), the parents of Shannon Tennyson. Shannon Tennyson was five years old during the events at issue in this case. Defendants are the Children's Services Division (CSD), a division of the Department of Human Resources of the State of Oregon, and Evelyn Goldsby and Vern Welter, CSD employees. Multnomah County (county) and Multnomah County Sheriff's Department Detective Robert Walliker also were parties below.[2]

In their second amended complaint, plaintiffs claim that they were deprived of rights secured by the First, Fifth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution and by the Adoption, Assistance and Child Welfare Act of 1980, 42 USC section 670 *et seq* (1982). Plaintiffs claim that Goldsby and Welter are liable under section 1983 and, alternatively, that all three defendants are liable under the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300, for deprivation of federal constitutional and statutory rights. Plaintiffs also claim that defendants are liable in negligence.

Defendants moved to dismiss the complaint for failure to state ultimate facts sufficient to constitute a claim.

---

[1] 42 USC section 1983 (1982) provides, in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2] Multnomah County (county) and Robert Walliker were named as defendants, but were not parties to the motion to dismiss, nor are they parties upon review. The judgment entered below in favor of the Children's Services Division (CSD), Evelyn Goldsby, and Vern Welter was entered pursuant to ORCP 67 B. Hereafter, the reference to "defendants" will not include the county or Walliker.

ORCP 21 A(8). Defendants argued that they were entitled to "absolute prosecutorial and discretionary immunity" for their actions. The trial court granted the motion and entered judgment dismissing plaintiffs' claims.

The Court of Appeals affirmed dismissal of the section 1983 claim, concluding that defendants were entitled to absolute immunity. The court reversed and remanded dismissal of the negligence claim, concluding that issues of fact in respect of discretionary immunity remained. *Tennyson v. Children's Services Division,* 93 Or App 366, 762 P2d 333 (1988). We affirm in part and reverse in part the decision of the Court of Appeals.

We turn to the issue for which we took review: Whether CSD workers are entitled to absolute immunity under section 1983? In doing so, we first set forth the allegations of plaintiffs' second amended complaint, discuss section 1983 immunity law and the functions of Oregon child protection workers, and then dispose of the issue presented by this case.

## I. DEFENDANTS' IMMUNITY UNDER SECTION 1983

*A. Allegations of Plaintiffs' Second Amended Complaint*

We take the facts from plaintiffs' second amended complaint:

In early 1983, CSD and the county investigated reports from a day-care center that Shannon had been bruised. CSD and the county did not question plaintiffs, nor did they ask a physician to examine Shannon.

In late 1983, a school counselor communicated with CSD about bruises on Shannon. Again, CSD and the county investigated without questioning plaintiffs or asking a physician to examine Shannon.

On January 9, 1984, CSD received another report about bruises. Goldsby communicated with Mother. Mother told Goldsby that Shannon "was physically awkward and clumsy, played hard, and therefore acquired bruises." She also told Goldsby that she had taken Shannon to a "Well Child Clinic," where a nurse told her not to worry about the bruises.

Goldsby responded that "the situation did not merit taking Shannon into protective custody."

Mother, however, was "extremely upset over the accusatory manner of the Goldsby interrogation." She communicated with Father, who communicated with CSD and "complained bitterly." In "retaliation," CSD and Goldsby had Walliker take Shannon into protective custody on January 11. This was done "without a full, fair and impartial investigation." Before removing Shannon, defendants did not try to eliminate a need to remove Shannon from her home.

On January 12, 1984, plaintiffs attended a juvenile court hearing. The referee ruled that Shannon should be placed in foster care. The decision was based "on the complaint allegations filed by [Goldsby], and the failure of [Goldsby and Walliker] to present an accurate and informed report based on full, fair and impartial investigation or to give plaintiffs adequate notice of the complaint allegations or to defend against same." Before the ruling, defendants did not investigate or communicate with friends, neighbors, relatives, or a physician about Shannon.

After the hearing, plaintiffs were not allowed to visit Shannon for two weeks. Then they were allowed "extremely limited visitation." While Shannon was in foster care, she incurred further bruises, including a two-inch bruise on her forehead.

On February 10, 1984, plaintiffs brought Shannon home. Welter told them that CSD would not again interfere with custody without first giving notice. He also assured them that Shannon would not be taken into CSD's custody again.

On February 16, 1984, however, Walliker took Shannon into custody without notifying plaintiffs. Another juvenile court hearing was held. At the hearing, Walliker arrested plaintiffs for criminal mistreatment. Plaintiffs were told that they could not visit Shannon until the criminal charges were resolved. Welter and Walliker, "by failing to fully and completely inform the juvenile court referee * * * caused [the referee] to inform plaintiffs that Shannon was to be placed in foster care 'before they had a dead child.' "

Shannon was placed in Waverly Children's Home. She was transferred to foster care and then returned to the

children's home. The home reported that "Shannon was clumsy, played hard and incurred several bruises about her body while in CSD's custody at Waverly." Welter and Walliker did not bring this "mitigating evidence" to the attention of the court.

On April 10, 1984, Father and Mother were allowed to visit Shannon for 30 minutes. Subsequently, they were allowed to visit for one hour each week.

Finally, on May 23, 1984, a trial court acquitted Father of criminal mistreatment. The charge against Mother was dismissed. On June 19, 1984, the juvenile court returned Shannon to plaintiffs' custody.

*B. Section 1983 Immunity Law and the Functions of Oregon Child Protection Workers*

■    Immunity under section 1983 is a matter of federal law. *Martinez v. California,* 444 US 277, 284 n 8, 100 S Ct 553, 62 L Ed 2d 481 (1980). Under section 1983, there are two types of immunity: qualified and absolute.[3]

Qualified immunity is the norm for executive officials. *Harlow v. Fitzgerald,* 457 US 800, 807, 102 S Ct 2727, 73 L Ed 2d 396 (1982). It protects conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, supra,* 457 US at 818; *see also Anderson v. Creighton,* 483 US 635, 107 S Ct 3034, 97 L Ed 2d 523 (1987) (qualified immunity protects conduct that reasonably might have been thought consistent with rights allegedly violated). Qualified immunity benefits, among others, state governors, *Scheuer v. Rhodes,* 416 US 232, 94 S Ct 1683, 40 L Ed 2d 90 (1974), and state hospital superintendents, *O'Connor v. Donaldson,* 422 US 563, 95 S Ct 2486, 45 L Ed 2d 396 (1975). Police officers also enjoy qualified immunity for carrying out law enforcement activities. *See Malley v. Briggs,* 475 US 335, 106 S Ct 1092, 89 L Ed 2d 271 (1986); *Pierson v. Ray,* 386 US 547, 87 S Ct 1213, 18 L Ed 2d 288 (1967).

---

[3] On its face, section 1983 does not admit of *any* immunity, which has led to the argument that there are *no* immunities under the statute. *See, e.g., Pierson v. Ray,* 386 US 547, 559, 87 S Ct 1213, 18 L Ed 2d 288 (1967) (Douglas, J., dissenting). Whatever its merit, that argument has not prevailed. *Imbler v. Pachtman,* 424 US 409, 417, 96 S Ct 984, 47 L Ed 2d 128 (1976).

■■    Absolute immunity, on the other hand, avails those whose "special functions" require *complete* protection from liability. *Harlow v. Fitzgerald, supra,* 457 US at 807. It *insulates* conduct within the scope of a particular function, regardless of whether that conduct violated rights of which a reasonable person would have known. As with qualified immunity, the *function* determines the immunity—status or job title does not entitle one to absolute immunity.[4] *Briscoe v. LaHue,* 460 US 325, 342, 103 S Ct 1108, 75 L Ed 2d 96 (1983).

Absolute immunity protects functions that are "integral parts of the judicial process." *Briscoe v. LaHue, supra,* 460 US at 335. Thus, judges are absolutely immune for judicial acts. *Pierson v. Ray, supra; Bradley v. Fisher,* 13 Wall 335, 20 L Ed 646 (1872). Police officers testifying at trial, *Briscoe v. LaHue, supra,* state prosecutors initiating criminal prosecutions, *Imbler v. Pachtman,* 424 US 409, 96 S Ct 984, 47 L Ed 2d 128 (1976), and federal employees initiating administrative proceedings, *Butz v. Economou,* 438 US 478, 98 S Ct 2894, 57 L Ed 2d 895 (1978), are entitled to absolute immunity.

The United States Supreme Court has not decided whether child protection workers are entitled to absolute immunity. Other courts, depending upon the function at issue, have reached varying results. *See, e.g., Hodorowski v. Ray,* 844 F2d 1210 (5th Cir 1988) (qualified immunity for removing child from home); *Whelehan v. County of Monroe,* 558 F Supp 1093 (WDNY 1983) (absolute immunity for alleged malicious prosecution). State law determines the functions of child protection workers; ORS chapters 418 and 419 determine the functions of CSD child protection workers.[5]

---

[4] An official may be entitled to absolute immunity, however, because of his or her constitutional status. *See Nixon v. Fitzgerald,* 457 US 731, 102 S Ct 2690, 73 L Ed 2d 349 (1982) (President entitled to absolute immunity for conduct while in office).

[5] Much of plaintiffs' argument founders upon the roles of state and federal law in determining section 1983 immunity.

Plaintiffs argue, with reference to ORS ch 418, that the legislature could have created absolute immunity for child protection workers, but did not do so. They draw the conclusion that this court should not "extend" absolute immunity.

The flaw in their argument is simple. Oregon law determines the functions of CSD child protection workers, but it does not—because it cannot—determine whether those functions merit absolute immunity under section 1983. The latter determination ultimately belongs to Congress or to the United States Supreme Court—not to the Oregon legislature. *See Rogers v. Saylor,* 306 Or 267, 277, 760 P2d 232 (1988) (citing *Owen v. City of Independence,* 445 US 622, 100 S Ct 1398, 63 L Ed 2d 673 (1980)).

Thus, under the Child Abuse Reporting Act, ORS 418.740 to 418.755, designated officials must report suspected child abuse to CSD or to a law enforcement agency. ORS 418.750 and 418.755. CSD (or the police) must then investigate "to determine the nature and cause of the abuse." ORS 418.760(1). CSD also must provide "protective social services" when necessary to protect a child from further abuse. ORS 418.760(2).

CSD may take a child into protective custody, either by juvenile court order, ORS 419.486(3) and 419.569(1)(c), or without an order "[w]here the child's condition or surroundings reasonably appear to be such as to jeopardize the child's welfare," ORS 419.569(1)(b). In addition, CSD may initiate a juvenile court proceeding by filing "a petition in the juvenile court alleging that a child named therein is within the jurisdiction of the court," *i.e.,* that the child has been abused. ORS 419.476(1)(e), 419.482(1), and 419.484(1). CSD workers may appear as witnesses at this proceeding, which may lead to CSD custody of the child or, in extreme cases, to termination of parental rights. ORS 419.507 and 419.523. Finally, CSD has responsibility for "physical custody and control" of a child of which it has "legal custody," ORS 419.519, although the juvenile court may specify the type of care and supervision to be provided, ORS 419.507(1)(b).

## C. Defendants' Immunity Under Section 1983

As the Court of Appeals noted, the second amended complaint "is not a model of clarity." *Tennyson v. Children's Services Division, supra,* 93 Or App at 368 n 1. We understand plaintiffs to assert under section 1983, however, that Goldsby and Welter deprived them of their federal civil rights by: (1) Testifying inaccurately and incompletely in juvenile court; (2) conducting an inadequate investigation into reports that Shannon had been abused; (3) taking Shannon into custody in retaliation for Father's complaint; and (4) keeping plaintiffs from visiting Shannon while she was in custody.

In their motion to dismiss, defendants argued that they are entitled to absolute immunity under section 1983. They argued that their actions were akin to those of prosecutors, who enjoy absolute immunity for certain of their activities. Plaintiffs responded that defendants functioned

more like police officers and thus are entitled to no more than qualified immunity.

■       With regard to defendants' testifying in juvenile court, *Briscoe v. LaHue, supra,* governs. There the United States Supreme Court concluded that a police officer, like any other witness, was entitled to absolute immunity under section 1983. Witnesses are "integral parts of the judicial process." 460 US at 335. Therefore, Goldsby and Welter are entitled to absolute immunity while testifying in juvenile court.

More problematic are plaintiffs' assertions about defendants' investigation, taking Shannon into custody, and keeping plaintiffs from Shannon. As was stated, in *Imbler v. Pachtman, supra,* the United States Supreme Court accorded absolute immunity to a prosecutor for initiating a prosecution; on the basis of *Imbler,* the Court concluded in *Butz v. Economou, supra,* that federal employees were entitled to absolute immunity for initiating an administrative proceeding.

Filing a petition in juvenile court under ORS 419.482(1) is functionally equivalent to conduct protected in *Imbler* and *Butz*—it *initiates* a proceeding. Goldsby thus would be entitled to absolute immunity for filing the petition (which plaintiffs refer to as "complaint allegations"). But the Court in *Imbler* reserved the question of whether a prosecutor is entitled to absolute immunity for investigative conduct, *Imbler v. Pachtman, supra,* 424 US at 430-31; more recently, the Court merely noted that the Courts of Appeals "generally have ruled that prosecutors do not enjoy absolute immunity for [investigation]," *Harlow v. Fitzgerald, supra,* 457 US at 811 n 16.[6]

Investigating child abuse parallels investigating crime. Like a police officer, a child protection worker gathers evidence before deciding upon a course of conduct, whether that conduct be taking a child into protective custody, filing a petition with the juvenile court, or affording "protective services." In fact, under ORS 418.760, police officers perform the same investigative functions as do child protection workers,

---

[6] For a discussion of prosecutorial immunity for investigative activities, see generally Note, *Immunizing the Investigating Prosecutor: Should the Dishonest Go Free or the Honest Defend?,* 48 Fordham L Rev 1110 (1980).

notifying CSD when an investigation discloses reasonable cause to believe that a child has been abused.

Moreover, investigating abuse is not an "integral part of the judicial process." Investigation may lead no further or may lead to action not involving the court. Thus, Goldsby and Welter are entitled to no more than qualified immunity, as stated in *Harlow v. Fitzgerald, supra,* for investigating reports that Shannon had been abused.

Likewise, defendants functioned as police officers by taking Shannon into protective custody. Again, police officers engage in this conduct. ORS 419.569(1) authorizes a "peace officer" to take a child into temporary custody.

■   Moreover, taking Shannon into custody was not an integral part of the judicial process because, again, defendants need not have involved the court to do so under ORS 419.569(1). Accordingly, Goldsby and Welter are entitled to no more than qualified immunity for taking Shannon into custody.

At this stage, defendants may be entitled to qualified immunity for limiting visits with Shannon. Unless ordered by the court—in which case defendants may be entitled to absolute immunity (the second amended complaint is unclear about the court's role)—limiting visits was not integral to the judicial process.

One issue remains for our consideration.

## II. DISCRETIONARY IMMUNITY UNDER THE OTCA

■   Defendants do not seek review of the ruling of the Court of Appeals concerning discretionary immunity on plaintiffs' negligence claim brought under the OTCA. *See Tennyson v. Children's Services Division, supra,* 93 Or App at 381. Instead, they argue that they are entitled to absolute immunity for *all* claims, regardless of whether those claims are brought under section 1983 or under the OTCA.

In so arguing, defendants misperceive the nature and significance of discretionary immunity under ORS 30.265(3)(c). The statute insulates them from "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the

discretion is abused." ORS 30.265(3)(c) grants *absolute* immunity for *discretionary* acts. *See Praggastis v. Clackamas County,* 305 Or 419, 426-27, 752 P2d 302 (1988) (common law immunities for judicial and quasi-judicial acts are part of immunities for discretionary acts under ORS 30.265(3)). Defendants are entitled to absolute immunity to the extent permitted by ORS 30.265(3)(c).

## III. CONCLUSION

We summarize our disposition of this case: (1) Defendants are entitled to absolute immunity under section 1983 in respect of testifying in juvenile court and to no more than qualified immunity in respect of investigation, taking Shannon into custody, and keeping plaintiffs from visiting Shannon; and (2) defendants are entitled to absolute immunity under the OTCA for their discretionary acts as provided by ORS 30.265(3)(c).

The decision of the Court of Appeals is affirmed in part and reversed in part. The case is remanded to the trial court for proceedings consistent with this opinion.