Argued and submitted February 14, reversed and remanded April 19, 2000

Jerry Lloyd FRANKE,
*Respondent,*

*v.*

OREGON DEPARTMENT OF FISH AND WILDLIFE,
Oregon Fish and Wildlife Commission
and Randy Fisher,
*Appellants.*

(CV960199)

Jerry Lloyd FRANKE,
*Respondent,*

*v.*

STATE OF OREGON
and Oregon Department of Fish and Wildlife,
*Appellants.*

(CV950431; CA A100940)

2 P3d 921

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for appellants. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

W. Eugene Hallman argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Haselton and Brewer, Judges.

BREWER, J.

## BREWER, J.

In these consolidated actions for malicious prosecution and wrongful use of civil proceedings, defendants[1] appeal from a judgment entered in plaintiff's favor on a jury verdict. Defendants assert that the trial court erred in denying their motions to dismiss and for directed verdict, which were based on the theory that they were immune from civil liability because their employees and agents were immune pursuant to ORS 496.620 (1991).[2] Alternatively, defendants argue that the trial court erred in denying their motion for leave to amend their answers in order to allege the immunity defense. Because we conclude that the trial court abused its discretion in denying defendants' motion to amend their answers, we reverse and remand.

This action arose from events that occurred in May 1992, when Sue Knapp and Jim Phelps, who were biologists employed by defendant Oregon Department of Fish and Wildlife (ODFW), investigated the deaths of 44,250 juvenile salmon at the West Extension Irrigation District (WEID) pump station located at the confluence of the Umatilla and Columbia rivers. During the investigation, Knapp and Phelps discovered that salmon were passing through WEID's fish screening devices and being killed in its pumps. At that time, plaintiff worked as operations manager for WEID and was responsible for operation of the pump station. Plaintiff told Phelps that he had manipulated the fish screens in order to achieve improved water flow into the pumps. Plaintiff acknowledged that he raised the screens six inches using

---

[1] We use "defendants" to refer to the State of Oregon, the Oregon Department of Fish and Wildlife and the Oregon Fish and Wildlife Commission. The claim against defendant Randy Fisher was previously dismissed, and he is not a party to this appeal.

[2] ORS 496.620 (1991) provided:

"No person authorized to enforce the wildlife laws shall suffer any civil liability for the enforcement or attempted enforcement of any provisions of the wildlife laws or for the exercise or attempted exercise of any of the duties or privileges granted to or imposed by law upon the commission or such persons."

The criminal prosecution was instituted against plaintiff in 1992, and the civil action was commenced in 1994. Except as otherwise noted, the versions of statutes referred to in this opinion were in effect at all relevant times. Unless otherwise stated, all subsequent references to statutes are to the versions previously cited.

wooden blocks. That measure created sufficient gaps to permit the juvenile salmon to pass through the screening devices.

In June 1992, based primarily on information received from Knapp and Phelps, the Oregon State Police cited and the Umatilla District Attorney charged plaintiff with violating ORS 509.615(5) (1991)[3] by "unlawfully and knowingly tamper[ing] with a fish screening device." During the criminal investigation, Phelps contacted Greg Robart, a staff biologist at ODFW's headquarters in Portland, and told him about the fish kill that had occurred at WEID's pump station. After Robart received the estimate of fish mortality, ODFW sought to recover civil damages against WEID. In September 1992, ODFW sent a demand letter to plaintiff in his capacity as operations manager for WEID. ODFW demanded "compensation for the value" of the 44,250 juvenile salmon plus ODFW's investigation costs and stated that if plaintiff did not respond to the letter within 60 days of its receipt, ODFW would "submit [the matter] to the [Attorney General] of the State of Oregon for appropriate legal action." Plaintiff did not respond to the letter, and, after 60 days had passed, ODFW referred the matter to the Attorney General for legal action. In January 1994, the Oregon Fish and Wildlife Commission (the Commission) initiated a civil action against WEID and against plaintiff individually to recover damages for killing the salmon. The Commission ultimately settled its claim against WEID and dismissed its claim against plaintiff.

At trial, plaintiff was acquitted of the criminal charge. In 1995, following his acquittal, plaintiff filed an action against defendants State of Oregon and ODFW for malicious prosecution. In 1996, plaintiff instituted a separate action against ODFW and the Commission, alleging wrongful use of a civil proceeding based on the action to recover damages for the loss of the salmon.[4] In both actions, plaintiff

---

[3] ORS 509.615(5) (1991) provided:

"No person shall interfere with, tamper with, damage, destroy or remove any fish screening or by-pass devices installed pursuant to this section."

[1] Plaintiff also alleged other claims for relief, but those claims were either dismissed or resolved by directed verdict and are not involved in this appeal.

alleged that defendants lacked "probable cause" to institute the proceedings and that the proceedings were instituted for a primary purpose other than "the securing of an adjudication of the claim" against plaintiff. On plaintiff's motion, the trial court consolidated the actions.

On June 17, 1997, defendants moved to dismiss both actions on the alternative grounds that the trial court lacked jurisdiction or that plaintiff's complaints failed to state ultimate facts sufficient to constitute a claim for relief because defendants "[had] complete and absolute statutory immunity from civil liability." *See* ORCP 21 A(1) and (8). Defendants generally asserted that they were immune from liability under ORS 30.265(2) because their officers, employees, and agents were immune from liability pursuant to ORS 496.620. Plaintiff responded that the claimed defense did not deprive the trial court of jurisdiction, nor did it affect whether plaintiff's complaints stated ultimate facts sufficient to constitute claims for relief. Plaintiff also argued that defendants were not entitled to prevail on the merits of the defense because defendants had failed to establish that their employees were statutorily "authorized to enforce the wildlife laws" under ORS 496.620.[5] On June 17, the trial court postponed the trial of the consolidated actions until October 1. Without explaining its reasons, the trial court thereafter denied the motion to dismiss.

On August 8, defendants filed a motion for leave to amend their answers in order to allege statutory immunity as an affirmative defense. Defendants tendered proposed amended answers asserting the immunity defense. The amended answers alleged that "[d]efendants' officers, employees and agents are immune from personal liability pursuant to ORS 496.620, and therefore [d]efendants are immune from liability pursuant to ORS 30.265(2)." Plaintiff objected that the proffered amendments merely alleged a "legal conclusion with no factual basis"; alternatively, plaintiff repeated its argument made in opposition to the motion to dismiss that the immunity defense failed on the merits.

---

[5] Plaintiff also contended that defendants waived the immunity defense by not including it in their answers. Plaintiff does not repeat that argument on appeal. Therefore, we do not discuss it.

Plaintiff did not contend that he would have been prejudiced if the court allowed defendants to amend their answers. Again, without explaining its reasoning, the trial court denied defendants' motion to amend.

At the conclusion of trial, defendants moved for a directed verdict, once more arguing that they were immune because all of their "officers and employees who acted in this case" were immune from liability under ORS 496.620. The trial court denied the motion, explaining that "[m]y prior rulings on this issue constitute the law on this case. I'm going to stick with that." The jury returned verdicts in plaintiff's favor in both actions, and the trial court entered judgment accordingly.

On appeal, defendants first assign error to the trial court's denial of their motion to dismiss and their motion for directed verdict. Defendants combine their discussion of those assigned errors because they believe that the trial court implicitly assessed the merits of the proffered immunity defense on each motion and erroneously concluded as a matter of law that defendants were not immune from civil liability under the relevant statutes. Defendants argue that, based on the facts alleged in the complaints, they were immune as a matter of law and entitled to have the claims dismissed and, if not, that the evidentiary record at trial established their immunity defense and required a directed verdict in their favor. We address each question in turn.

Plaintiff asserts that the trial court properly denied the motion to dismiss because defendants had not pleaded statutory immunity as an affirmative defense in their original answers. Defendants dispute that assertion, arguing that the defense was properly before the trial court because the ultimate facts as pleaded by plaintiff established the defense as a matter of law. *See Comley v. State Bd. of Higher Ed.*, 35 Or App 465, 468-69, 582 P2d 443 (1978) (immunity may be raised in any pleading or motion appropriate for resolving legal issues). For the reasons explained below, we conclude that the facts alleged in plaintiff's complaints did not establish the immunity defense as a matter of law, and, thus, the trial court properly denied the motion.

■■ Unless immunity can be determined on the face of the complaint, dismissal under ORCP 21 A is not appropriate; rather, immunity must be pleaded as an affirmative defense and proved by the defendant. *Scovill v. City of Astoria*, 129 Or App 240, 243, 878 P2d 1127, *mod* 130 Or App 425, 882 P2d 1126 (1994), *aff'd in part and rev'd in part* 324 Or 159, 921 P2d 1312 (1996); *Tennyson v. Children's Services Division*, 93 Or App 366, 381, 762 P2d 333 (1988), *aff'd in part and rev'd in part* 308 Or 80, 775 P2d 1365 (1989). In order to determine whether plaintiff's complaints establish immunity on their face, we must first identify the elements of the immunity defense and then examine the complaints in order to determine whether they contain each of the necessary elements. *Scovill*, 129 Or App at 243.

■ Defendants assert that they are immune from liability under ORS 30.265(2) because their agents were immune from liability under ORS 496.620. ORS 30.265(2) provides:

> "Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employee or agent of a public body when such officer, employee or agent is immune from liability."

We agree that ORS 30.265(2) immunizes defendants, if their agents are immune. *Praggastis v. Clackamas County*, 305 Or 419, 432, 752 P2d 302 (1988). We therefore must determine whether defendants' agents are immune, based on the allegations of the respective complaints under ORS 496.620, which provided:

> "No person authorized to enforce the wildlife laws shall suffer any civil liability for the enforcement or attempted enforcement of any provisions of the wildlife laws or for the exercise or attempted exercise of any of the duties or privileges granted to or imposed by law upon the commission or such persons."

Defendants argue that the statute immunizes their agents' conduct relating to both the criminal and civil proceedings because the agents either were "enforcing or attempting to enforce the wildlife laws" or were "exercising or attempting to exercise the duties or privileges granted to or imposed by law." Assuming that defendants' agents were

exercising their duties and privileges or enforcing the wildlife laws, plaintiff asserts that only "persons authorized to enforce the wildlife laws" are entitled to immunity and that the legislature did not intend to authorize *all* agents of defendants to enforce wildlife laws.[6] Because plaintiff's assertion presents a question of statutory construction, we examine the text and context of ORS 496.620 and, if necessary, its legislative history and other aids of construction in order to determine the meaning of "persons authorized to enforce the wildlife laws." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

The text of ORS 496.620 is our starting point because it is the best evidence of legislative intent. *Id.* at 610. Because the text provides no guidance as to what "persons" the legislature intended to enforce the wildlife laws, we turn to the statute's context, which includes the provisions of related statutes. *State v. Guzek*, 322 Or 245, 253, 906 P2d 272 (1995). Several statutes inform our inquiry.

ORS 496.605 provides:

"The *State Fish and Wildlife Director* and *any deputies of the director* and *all other peace officers* of this state or any political subdivision thereof have jurisdiction of and *may enforce* any of the provisions of *the wildlife laws*." (Emphasis added.)

That statute authorizes the director of ODFW, deputies of the director, and all peace officers of the state or any political subdivision to enforce the wildlife laws. The Department of State Police must "employ a sufficient number of state police [officers] to enforce the wildlife laws" and may employ "special enforcement officers" if needed. ORS 496.610(1) and (3). The Commission is also authorized to employ "such persons as they deem necessary or expedient for the enforcement of the wildlife laws" but only with approval of the governor and the superintendent of the state police. ORS 496.615. Finally, the director of ODFW may delegate his or her enforcement authority to any employee of ODFW. *See* ORS 496.118(3)

---

[6] Plaintiff asserts that the immunity defense violates Article I, section 10, of the Oregon Constitution. However, because defendants were never allowed to plead the defense below, we decline to address plaintiff's assertion. We believe it is for the trial court to consider in the first instance as part of the immunity defense.

(1993) ("director may delegate to any employee of the department * * * any power, duty or function of whatever character, vested in or imposed by law upon the director").[7]

We conclude, therefore, that defendants were entitled to dismissal under ORS 496.620 if the complaints alleged each of two elements: first, that any of the above persons was responsible for instituting the criminal and civil proceedings on defendants' behalf; and second, that such persons either acted in the course of the enforcement or attempted enforcement of the wildlife laws or, alternatively, in the exercise or attempted exercise of any duty granted to or imposed by law on such persons. Because the complaints do not allege facts sufficient to satisfy the first element, we do not consider the second.

In examining the complaints, we assume the truth of well-pleaded allegations, as well as any inferences that may be drawn from them, and view those allegations in the light most favorable to the nonmoving party, *i.e.*, plaintiff. *See Natkin & Co. v. H.D. Fowler Co.*, 128 Or App 311, 313, 876 P2d 319 (1994). In both complaints, plaintiff merely alleged that "defendants" caused the institution of the criminal and civil proceedings. The complaints identify "defendants" as only "State of Oregon," "Oregon Department of Fish and Wildlife," and "Oregon Fish and Wildlife Commission." Nowhere in either pleading does plaintiff identify any persons who acted on defendants' behalf. Because it is not possible to determine on the face of the complaints whether the agents acting on behalf of defendants were persons authorized to enforce wildlife laws, the trial court properly denied the motion to dismiss. We turn next to defendants' motion for directed verdict.

Defendants were required to plead statutory immunity as an affirmative defense. However, the trial court denied defendants' motion for leave to amend their answers in order to plead the defense. Accordingly, defendants'

---

[7] ORS 496.118(3) was enacted in 1993. *See* Or Laws 1993, ch 659, § 5. Thus, that statute *was not* in effect when the criminal proceeding was instituted in 1992, but *was* in effect when the civil action was filed against plaintiff in 1994. In 1999, ORS 496.118(3) was renumbered as ORS 496.118(4). *See* Or Laws 1999, ch 697, § 3.

motion for directed verdict was based on an *unpleaded* affirmative defense. The parties agree that the trial court nonetheless "apparently addressed the motion on the merits, without regard to the pleading issue." That assertion, however, is not supported by the record. In denying the directed verdict motion, the trial court treated its prior rulings on the motion to dismiss and the motion to amend as the "law of the case" and, without elaboration, adhered to those rulings.

■ The trial court did not err in denying the directed verdict motion because it was based on an affirmative defense that the court had expressly foreclosed by denying defendants' motion to amend. In view of the court's order, plaintiff had no reason to anticipate that the defense would be at issue at trial. Further, defendants did not make a motion to amend their answer to conform to the evidence received. *See* ORCP 23 B. Therefore, it is not necessary to consider whether the evidence at trial established the immunity defense. The only remaining question on appeal is whether the court erred in denying defendants' pretrial motion to amend their answers.

■■ A trial court must freely give a party leave to amend its answer "when justice so requires." ORCP 23 A. Leave to amend should normally be allowed unless the other party would be prejudiced in some respect. *See Quirk v. Ross*, 257 Or 80, 83, 476 P2d 559 (1970) (motion to amend pleading should ordinarily be allowed unless other party is prejudiced). The decision as to whether the other party would be prejudiced is committed to the discretion of the trial judge, and his or her decision will not be disturbed in the absence of an abuse of such discretion. *Id.* With those principles in mind, we turn to defendants' motion.

■ On June 17, defendants filed their motion to dismiss based on the immunity defense. Defendants filed their motion to amend on August 8, which was more than 50 days before the scheduled trial date. The trial court denied the motion to amend on September 17, without making any express finding of prejudice. Although we generally presume that a trial court found facts consistent with its rulings, we do so only if there is evidence in the record to support those findings. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

The record here, however, contains no evidence demonstrating that plaintiff would have been prejudiced if the trial court had allowed defendants to amend their answers. In fact, plaintiff was fully aware of defendants' intention to rely on the immunity defense based on the filing of the motion to dismiss and, after the motion to amend was filed, had almost two full months before trial to prepare any opposition to the defense. Moreover, plaintiff never made a claim of prejudice to the trial court; instead, plaintiff opposed the motion on other grounds. Therefore, we conclude that the trial could not have denied defendants' motion on an implicit finding of prejudice but, rather, must have denied the motion based on the arguments plaintiff *did* advance in opposition to defendants motion to amend. Of those arguments, only one merits further discussion.

Plaintiff contends that the trial court properly denied defendants' motion to amend because the proffered amendment was "nothing more than a legal conclusion" without "factual allegations which would [have permitted] the court to determine whether the employees of [ODFW] were brought within the purview of ORS 496.620." We disagree.

A party is required to "set forth affirmatively * * * any * * * matter constituting an avoidance or affirmative defense" in a responsive pleading. ORCP 19 B. Defendants were required to allege the immunity defense in "short and plain terms." ORCP 19 A. Here, defendants' proposed amended answers alleged that "[d]efendants' officers, employees and agents are immune from liability pursuant to ORS 496.620, and therefore [d]efendants are immune from liability pursuant to ORS 30.265(2)." Defendants' pleading complied with ORCP 19 A.

It is true that defendants did not identify the specific officers, employees, and agents who were immune pursuant to ORS 496.620. However, plaintiff's complaints did not identify the persons who acted on defendants' behalf. Instead, plaintiff chose to identify only the public body defendants in his complaints.[8] Under the circumstances, defendants were

---

[8] The lone exception was the claim against Fisher, which was dismissed before trial.

not required to supply that information by way of an affirmative defense in order adequately to state a defense. Therefore, in the absence of prejudice to plaintiff arising from the delay in asserting the defense, we conclude that the trial court abused its discretion in denying defendants' motion for leave to amend their answers. *See Family Bank of Commerce v. Nelson*, 72 Or App 739, 746, 697 P2d 216, *rev den* 299 Or 443 (1985). As a result, defendants are entitled to a new trial in order to assert the immunity defense.

Reversed and remanded.