Argued and submitted August 4, 2004, affirmed December 7, 2005, petition for review denied March 21, 2006 (340 Or 308)

Dan L. REEVES
and Vitamin Village, Inc.,
an Oregon corporation,
*Respondents,*

*v.*

Jerry REEVES
and J. C. Reeves Corporation,
an Oregon corporation,
*Appellants.*

CCV 9904625; A115233

125 P3d 755

Montgomery W. Cobb argued the cause for appellants. On the opening brief were Thomas W. Brown, Wendy M. Margolis, and Cosgrave Vergeer Kester LLP. With him on the reply brief was Cobb & Bossé, LLP.

Joseph A. Yazbeck, Jr., argued the cause for respondents. With him on the briefs was Yazbeck, Cloran & Hanson, LLC.

Before Edmonds, Presiding Judge, and Rosenblum* and Schuman, Judges.

ROSENBLUM, J.

---

* Rosenblum, J., *vice* Wollheim, J.

**ROSENBLUM, J.**

Plaintiff Dan Reeves brought five claims against his brother, defendant Jerry Reeves,[1] for breach of contract pertaining to promissory notes. One claim was voluntarily dismissed, and the four remaining claims were tried to a jury, which found that defendant owed approximately $1,000,000 on the notes. Defendant appeals and raises six assignments of error, ranging from the trial court's allowance of plaintiff's motion to amend his complaint to its award of attorney fees. We affirm.

We begin with an overview of the facts, which are undisputed, except as noted. Then, as necessary, we detail additional facts as we address defendant's specific assignments of error.

Plaintiff made five loans to defendant totaling nearly $2,000,000, four of which were memorialized in four promissory notes. According to plaintiff, the parties later agreed to renew the loans on different terms, and those new terms were memorialized in five "renewal" notes. Also, according to plaintiff, although defendant initially made regular payments in accordance with the terms of the renewal notes, he eventually defaulted on all five loans.

According to defendant, he never agreed to the terms of the renewal notes. In addition, although defendant acknowledged that he had ceased making regular payments on the original notes, he asserted that his obligations under those notes had been satisfied by contributions that he made to various projects that the parties were involved in together. One project was a joint venture by the parties to develop real property for a Staples store. Another involved a house that defendant built for plaintiff.[2] In defendant's view, plaintiff

---

[1] Also parties to this litigation are plaintiff Vitamin Village, Inc., and defendant J.C. Reeves Corporation, which are controlled, respectively, by Dan Reeves and Jerry Reeves. For purposes of this opinion, we refer only to plaintiff Dan Reeves and defendant Jerry Reeves, although the parties' arguments are equally applicable to all plaintiffs and defendants.

[2] Both of those projects resulted in separate litigation. The "Staples case" settled before this case went to trial. As of this appeal, the "house case" is still awaiting trial.

agreed to credit defendant for work he performed building plaintiff's house, for contributions he made to the Staples project, and for several other joint financial obligations that are not relevant here. According to defendant, if plaintiff had properly applied those credits to the loans at issue in this case, the loans would be fully repaid.

Plaintiff's complaint contained five claims for breach of contract, alleging breach of the five renewal notes. Defendant's answer included various affirmative defenses and counterclaims—including estoppel, setoff, recoupment, breach of contract, and bad faith—each of which alleged that plaintiff owed defendant money in connection with the business dealings discussed above and should have credited that money toward the loans in this case. Just before trial, plaintiff amended the complaint by dropping the fifth claim for relief, which alleged breach of the fifth promissory note. During trial, the trial court allowed plaintiff to further amend the complaint by adding one count to each of the remaining four claims. Those additional counts each contained an alternative theory of recovery, alleging breach of the *original* promissory notes. The primary difference between the terms of the original notes and those of the renewal notes was that the original notes contained fewer penalties for late payments; thus, the amount that plaintiff sought in connection with the original notes was substantially less than the amount sought in connection with the renewal notes.

The jury found for plaintiff on each of his four claims and for defendant on his counterclaims. The verdict form did not distinguish between plaintiff's alternative theories of recovery nor between the original notes and the renewal notes. Instead, it asked the jury only to specify the amount, if any, owed on the first, second, third, and fourth "loan." As to the first, second, and fourth loans, the jury verdict specified an amount that was less than that sought by plaintiff on those counts. On the third loan, the jury's verdict specified an amount that fell in between the amount that plaintiff sought in connection with the original note and the amount sought on the renewal note. The total award to plaintiff was approximately $1,000,000.

The verdict form did not distinguish between defendant's various counterclaims. Instead, it asked the jury to specify the amount, if any, owed on the "counterclaims." In instructing the jury, the trial court summarized all of the defenses and counterclaims alleged in defendant's answer. The jury awarded defendant $92,028 on the counterclaims.

The trial court entered a judgment that tracked the jury's verdict, with one discrepancy. Although the verdict form referred to defendant's "counterclaims," the judgment referred to only one unspecified "counterclaim" by defendant, on which it awarded the full $92,028. Noting that the money judgment did not dispose of all defendant's counterclaims, we gave the trial court leave to enter an appealable judgment under ORS 19.270(4). To fix the problem, the trial court entered an amended judgment that altered the original by dismissing all but one of the counterclaims.

■ This appeal ensued. In his first assignment of error, defendant asserts that the trial court erred in allowing plaintiff to amend his complaint on the third day of trial. The facts relevant to that assignment of error are procedural and are not in dispute. At the beginning of trial, after dismissal of the fifth claim for relief, the operative complaint was the third amended complaint, which contained claims alleging breach of four of the five renewal notes. On the third day of trial, plaintiff moved to file a fourth amended complaint which would include the alternative theory of recovery—breach of four of the *original* promissory notes. The trial court granted the motion, reasoning that defendant was not prejudiced because he did not contest the validity of the original loans and because his defenses—repayment and offset—would be the same. We agree.

■■ Leave to amend a complaint should be freely given "when justice so requires." ORCP 23 A. An amendment, even one requested during trial, should normally be allowed unless the other party would be prejudiced in some respect. *See Quirk v. Ross*, 257 Or 80, 83, 476 P2d 559 (1970) (motion to amend pleading during trial should ordinarily be allowed unless other party is prejudiced); *Franke v. ODFW*, 166 Or App 660, 669, 2 P3d 921 (2000) (same). Whether the other

party would be prejudiced is a decision committed to the discretion of the trial judge, and his or her decision will not be disturbed in the absence of an abuse of such discretion. *Id.* Defendant concedes that he cannot demonstrate prejudice in this case; he is unable to identify any discovery, evidentiary, or other matter that he would have approached differently had the additional counts been pleaded earlier. However, defendant relies on *Navas v. City of Springfield*, 122 Or App 196, 857 P2d 867 (1993), for the proposition that a trial court abuses its discretion in allowing an amendment that changes the theory of recovery, even in the absence of a showing of prejudice by the adverse party.

We read *Navas* differently and also distinguish it from the facts here. First, the plaintiff in *Navas* originally sought equitable relief from his employer under a statute governing certain trusts. The defendant moved to dismiss on the ground that the statute did not confer a private right of action to that plaintiff. The plaintiff conceded as much and then attempted to change his claim to one for breach of contract, although no actual amendment of the pleadings ever occurred. *Id.* at 200. Here, defendant did not attempt to switch from a groundless equitable claim to an entirely different legal one. Instead, he added a theory of recovery to his already existing claims. Thus, this case is factually different from *Navas*. Second, in *Navas*, the issue of prejudice was not directly raised, and this court did not discuss it. Defendant reads our silence on the issue as eliminating the requirement of prejudice. That silence, however, does not mean that we intended to alter or deviate from our longstanding rule that an amendment should normally be allowed unless the other party is prejudiced. *See Quirk*, 257 Or at 83; *Franke*, 166 Or App at 669. We therefore reject defendant's first assignment of error and turn to his second.

In his second assignment of error, defendant contends that the trial court erred by denying his motion for a directed verdict, in which defendant sought to prevent the counts based on the renewal notes from being submitted to the jury on the ground that they were barred by the statute of frauds. Defendant acknowledges that the jury could have based its verdict on the original notes, to which he did not object on that ground. Nevertheless, he asserts that we must

remand for a new trial because we cannot tell on which counts the jury based its verdict. In support of his request for a new trial, he cites *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 359, 788 P2d 428 (1990). However, in *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 173-74, 61 P3d 928 (2003), the Supreme Court repudiated the *Whinston* "we can't tell" rule and held that ORS 19.415(2) requires that an asserted error affect a substantial right in order to support reversal— that is, the error must be prejudicial. If the court cannot tell whether an asserted error is prejudicial, then it is not a ground for reversal. *Id.*

In this case, defendant cannot establish that the trial court's alleged error was prejudicial because we do not know on which specific counts the jury based its verdict. Assuming, for the sake of argument, that the trial court erred in allowing the jury to consider the renewal notes, there would be no prejudice if the jury's verdict was based upon the original notes. *See Cook v. Gillen Logging Inc.*, 190 Or App 68, 70-71, 77 P3d 1171 (2003) (the defendant could not demonstrate prejudice based on a general jury verdict where there was more than one basis for liability). In sum, because we cannot determine whether the asserted error is prejudicial, the second assignment of error fails.

■      In his third assignment of error, defendant asserts that "the trial court erred in dismissing in part defendant's counterclaims and estoppel defense * * *." Defendant does not assert that the trial court actually dismissed his claims or struck his affirmative defense. Instead, he seems to argue that the effect of two different rulings by the trial court—one ruling on a motion *in limine* to exclude evidence and one denying a motion for a mistrial—was to dismiss his counterclaims and affirmative defense.[3] In support of his argument,

---

[3] Defendant has various theories about the grounds for the alleged dismissal. He alternately asserts that the trial court based the alleged dismissal on either (1) claim preclusion; (2) ORCP 53 A, which authorizes a trial court to consolidate certain claims into a single case; or (3) ORCP 22 E, which allows a court to order a separate trial of a counterclaim under certain circumstances. Defendant argues that none of those grounds was proper. To complicate matters, plaintiff asserts that any alleged dismissal was proper under ORCP 21 A(3), which allows a court to dismiss a claim if there is another action pending between the same parties for the same cause. Because we conclude that the trial court did not dismiss defendant's counterclaims during the relevant time frame, we do not address the merits of the parties' respective arguments regarding the propriety of dismissal.

defendant relies on two statements made by the trial court in the course of ruling on the motion *in limine* and the motion for a mistrial, indicating that defendant was not to put on evidence in this case pertaining to "the house case." We do not share defendant's view that those statements constituted a dismissal, either in whole or in part, of his counterclaims.

As noted above, all of defendant's counterclaims were submitted to the jury. It was not until after trial—and, of course, after the verdict—that the trial court dismissed any of defendant's counterclaims. Those counterclaims and the estoppel defense were couched in general terms and alleged that the parties had multiple business transactions, of which the home construction was one, and that defendant should have received credits against his loan obligations as a result of those business dealings. Although, after the ruling denying the motion for a mistrial, defendant did not make any further attempt to present evidence relating to "the house case," he did adduce evidence about the other business transactions. Accordingly, in instructing the jury, the trial court summarized the allegations in each of defendant's affirmative defenses and counterclaims. In addition, the court gave the jury special instructions that defendant had requested regarding his setoff and recoupment counterclaims. The jury returned a verdict that found for defendant on his "counterclaims" and awarded $92,028 in damages. Thus, all of defendant's counterclaims were considered by the jury, without exception.

It is true that, after trial and upon this court's direction, the trial court entered an amended judgment dismissing some of defendant's counterclaims. However, defendant did not object. Moreover, even if defendant had objected to the amended judgment, the dismissal of defendant's counterclaims at that stage of the proceedings could not have prejudiced defendant because the jury had already considered the counterclaims. Because the trial court did not dismiss defendant's counterclaims at any relevant stage of the proceedings, we conclude that his third assignment of error "wages battle over something that did not occur." *Sansone v. Garvey, Schubert & Barer*, 188 Or App 206, 225, 71 P3d 124, *rev den*, 336 Or 16 (2003) (rejecting assignment of error that mischaracterized trial court's ruling). We therefore reject it.

It is particularly significant to our ruling on this assignment of error that defendant does not assign error to either of the rulings that the trial court did make here—namely, the ruling on the motion *in limine* and the ruling denying defendant's motion for a mistrial. Rather, he asserts only that "the trial court erred by dismissing in part defendant's counterclaims and estoppel defense * * *." At oral argument, defendant repeatedly stressed that the issue here was not an evidentiary one but, rather, a pleading issue. His sole position was that no rule of procedure authorized the trial court to dismiss his counterclaims. Accordingly, we do not address the propriety of the trial court's rulings on the motion *in limine* or motion for a mistrial. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claimed error * * * is assigned as error in the opening brief in accordance with this rule * * *."); ORAP 5.45(3) ("Each assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged.").

We turn to defendant's fourth assignment of error. Defendant asserts that the trial court erred in granting, in part, plaintiff's motion *in limine* to exclude evidence regarding a joint venture by the parties to develop real property for a Staples store. In the portion of his motion relating to the Staples project, plaintiff argued that all issues relating to that project had been resolved in a different case, which had already settled. In response, defendant argued that, at the time of the settlement in the Staples case, there had been no final accounting of the limited liability corporation (LLC) that the parties created to manage the Staples project. Thus, there was no final accounting of the parties' respective obligations with respect to the Staples project. Defendant argued that a final accounting would reflect that plaintiff owed defendant money, and that the debt should have been credited against the loans in this case. Defendant also argued that plaintiff failed to timely apply the proceeds that he received from the settlement to the loans and, thereby, failed to mitigate his damages.

In ruling on the motion *in limine*, the trial court agreed with defendant. The court ruled:

"THE COURT:   * * * Now, the [Staples case] resulted in a settlement, proceeds of $422,000 that were applied to one of the notes in this case. It's my understanding it's an issue of mitigation whether or not it could have earlier been applied and reduced interest. Is there also an issue that there were continuing costs of the LLC after?

"[DEFENSE COUNSEL]:   Yes, sir. And the distribution thereof after closing.

"THE COURT:   And those arguably aren't subject to the settlement. So, to the extent that there was a settlement and its application, the motion *in limine* is allowed.

"There—if there is evidence regarding application of funds which would relate to the issue of mitigation or continuing costs of the LLC, those—the motion *in limine* would be denied as to that."

Defendant argues that, although stated in terms of excluding evidence, the trial court's ruling had the effect of striking his counterclaims and estoppel defense. Again, we disagree with defendant's characterization of the court's ruling. At no point did the trial court strike defendant's counterclaims or affirmative defenses. Instead, as quoted above, the trial court ruled on a motion *in limine* to exclude evidence.

To the extent that defendant's argument on appeal challenges that evidentiary ruling, we reject the challenge because the ruling was not adverse to defendant. The trial court agreed with defendant that evidence about the final accounting of the Staples project and plaintiff's application of the settlement proceeds to the loans in this case were relevant here. Accordingly, it denied plaintiff's motion *in limine* as to that evidence. Although the trial court granted the motion "to the extent that there was a settlement," we are unable to discern from the record or from the arguments made to this court what particular evidence he wished to present regarding the settlement that the trial court excluded. OEC 103(1) provides, in part:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

"* * * * *

"(b)   In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Because we cannot discern the substance of the evidence that the trial court excluded or otherwise discern how the court's ruling was adverse to defendant, we reject defendant's fourth assignment of error.

■     In his fifth assignment of error, defendant asserts that the trial court erred in awarding plaintiff attorney fees because plaintiff did not properly allege entitlement to fees in his complaint. Defendant argues that the award of attorney fees was made pursuant to the attorney fee provision in the original promissory notes. He contends that was error because plaintiff did not allege entitlement to fees under the original notes. However, defendant acknowledges that plaintiff alleged entitlement to attorney fees in the counts based on the renewal notes and that both the original and the renewal notes contained attorney fees provisions sufficient to support the attorney fee award here. Defendant's argument presents a question of law that we review for legal error. *Lumbermen's v. Dakota Ventures*, 157 Or App 370, 374, 971 P2d 430 (1998).

■     The failure to identify the source of an attorney fee request is not fatal to that request if (1) the facts asserted support an award of attorney fees, (2) the adverse party has been fairly alerted that attorney fees would be sought, and (3) no prejudice would result from an award of attorney fees. *Mitchell v. Pacific First Bank*, 130 Or App 65, 77, 880 P2d 490 (1994). Those requirements are met here. First, defendant acknowledges that both the original notes and the renewal notes contained attorney fees provisions. The "facts asserted" therefore support the trial court's award of attorney fees. Second, defendant also acknowledges that plaintiff pleaded entitlement to attorney fees in connection with the renewal notes. Although plaintiff did not plead entitlement to fees in connection with the original notes, the allegations that he was entitled to fees under the renewal notes—taken together with the request for attorney fees contained in the prayer— fairly alerted defendant that attorney fees would be sought.

Third, defendant does not argue that he was prejudiced by the award, and we fail to see how he could have been under the circumstances here. We therefore reject defendant's fifth assignment of error.

■  In his sixth and final assignment of error, defendant asserts that the trial court erred in failing to make findings sufficient to justify the amount of attorney fees that it awarded. Defendant does not make any argument about why the award was unreasonable; he argues only that we should reverse the award because of the absence of findings. We disagree. A trial court is required to make findings on its attorney fee award only when a party makes a written request for findings in accordance with ORCP 68 C(4)(e). Here, defendant made only an oral request for findings at a hearing on objections to the court's attorney fee award. He makes no claim that he complied with ORCP 68 C(4)(e). We therefore reject his final assignment of error.[4]

Affirmed.

---

[4] We acknowledge that, where a party challenges the substance of an attorney fee award, findings may be necessary for meaningful appellate review. *See McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 957 P2d 1200, *adh'd to on recons*, 327 Or 185, 957 P2d 1200 (1998). In this case, however, defendant does not challenge the substance of the award but argues that we should reverse solely because of the absence of findings. But, "[s]tanding alone, the absence of explanatory findings to support an award or denial of attorney fees is not a ground for reversal." *McCarthy*, 327 Or at 189.